**AMENDED OPINION**

**William L. WILEY, Petitioner–Appellant,**

**v.**

**Steve W. PUCKETT, Superintendent, Mississippi State Penitentiary, and Mike Moore, Attorney General, Respondents–Appellees.**

**No. 90–1599.**

United States Court of Appeals, Fifth Circuit.

July 20, 1992.

Amended Aug. 5, 1992.

88

Coleman S. Hicks, Steven Semeraro, Covington & Burling, Washington, D.C., T.H. Freeland IV, Freeland, Freeland & Wilson, Oxford, Miss., for petitioner-appellant.

Marvin L. White, Jr., Asst. Atty. Gen., Mike Moore, Atty. Gen., Jackson, Miss., for respondents-appellees.

Before POLITZ, Chief Judge, KING and GARWOOD, Circuit Judges.

KING, Circuit Judge:

William L. Wiley, a Mississippi prisoner under a sentence of death, appeals from the district court's denial of his petition for a writ of habeas corpus. He raises six distinct issues for our review, including a claim that his sentence should be invalidated because it was based in part on the aggravating circumstance that the murder was "especially heinous, atrocious or cruel." After hearing oral argument,[1] we reserved decision until the Supreme Court determined whether *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the case upon which the aggravating circumstance claim was founded, could be applied retroactively to persons such as Wiley whose death sentences became final before that decision was is-

sued. The Court has now decided in *Stringer v. Black*, — U.S. —, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), that *Clemons* did not announce a new rule for purposes of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and so may be applied retroactively. After receiving supplemental briefing on the effect of *Stringer*, we are prepared to rule on all of Wiley's claims.

## I. BACKGROUND AND PROCEDURAL HISTORY

On August 22, 1981, after J.B. Turner and his daughter closed the convenience store Turner operated in DeSoto County, Mississippi, Wiley emerged from a hiding place and fired three shots from a shotgun. Turner's daughter, Patricia Harvey, was injured, and Turner died on the scene. Wiley took a small money box containing $350 to $400 and fled, leaving the shotgun. Federal agents connected the shotgun to Wiley, and Wiley was eventually arrested in Memphis, Tennessee. Wiley confessed to the robbery and murder and was tried for capital murder.

Wiley was convicted of capital murder, which in Mississippi includes a murder committed in the course of a robbery, and sentenced to death. On appeal, the Mississippi Supreme Court affirmed the conviction, but reversed the death sentence because of improper comments by the prosecutor. *Wiley v. State*, 449 So.2d 756 (Miss. 1984). The second sentencing hearing resulted in a second death sentence. This time the Mississippi Supreme Court affirmed. *Wiley v. State*, 484 So.2d 339 (Miss.), *cert. denied*, 479 U.S. 906, 107 S.Ct. 304, 93 L.Ed.2d 278 (1986) (*Wiley II*). Wiley then sought post-conviction relief under the Mississippi Uniform Post–Conviction Collateral Relief Act, Miss.Code Ann. § 99–39–1 *et seq.* (Supp.1991). The Mississippi Supreme Court again denied relief. *Wiley v. State*, 517 So.2d 1373 (Miss.1987), *cert. denied*, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 610 (1988) (*Wiley III*). The court refused to hear eight of Wiley's claims

---

1. Chief Judge Clark participated in the hearing of this appeal, but resigned from the court on January 15, 1992. Judge Carolyn Dineen King was substituted on the panel.

because they had already been litigated on direct appeal and were thus res judicata under state law. *Id.* at 1377. The court refused to hear an additional eight claims on the ground that they had not been raised at trial or on direct appeal and were therefore procedurally barred. *Id.* at 1378. On the only claims open for review, the court held that Wiley had not been deprived of effective assistance of counsel at the trial or sentencing. *Id.* at 1382–83.

Wiley then initiated habeas proceedings in federal district court. The court held seven claims procedurally barred. It reviewed the remaining claims on the merits, but found that none warranted relief. In addition, it refused to grant an evidentiary hearing on Wiley's claim that he was denied effective assistance of counsel.[2] We granted a certificate of probable cause to appeal.

Wiley asks us to review the following issues, all of which relate to the second sentencing hearing:

1. Whether the death sentence is invalid under the Eighth Amendment because (a) the jury was instructed to consider whether the murder was "especially heinous, atrocious or cruel" and (b) the jury found two aggravating circumstances (murder for robbery and murder for pecuniary gain) arising out of the same conduct.

2. Whether the district court erred in holding that Wiley was not entitled to an evidentiary hearing on his claim that he received ineffective assistance of counsel at the sentencing phase.

3. Whether the prosecution's exclusion of all but one black juror from the sentencing jury violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

4. Whether the prosecutor improperly referred to the character of the victim.

5. Whether several statements made by the prosecutor deprived Wiley of a fair trial.

6. Whether the introduction of photographs of the victim was unduly prejudicial.

## II. AGGRAVATING CIRCUMSTANCES CLAIMS

Under Mississippi law, the jury may impose a death sentence on a person convicted of capital murder if it finds one or more statutorily defined aggravating circumstances, and then determines that the aggravating circumstance or circumstances outweigh any mitigating circumstances. Miss.Code Ann. § 99–19–101 (Supp.1991). Mississippi is, therefore, what has been termed a "weighing" state. *Stringer,* 112 S.Ct. at 1136. At Wiley's sentencing, the trial judge instructed the jury, over Wiley's objection, that it could consider four aggravating circumstances. These were (1) whether the capital offense was committed during the commission of an attempt to commit the crime of robbery; (2) whether the capital offense was committed for pecuniary gain; (3) whether the capital offense was especially heinous, atrocious or cruel; and (4) whether the defendant was previously convicted of a felony involving the use or threat of violence to the person. *Wiley II,* 484 So.2d at 350. In a written verdict, the jury stated that it found the first three aggravating circumstances. The jury further stated that the mitigating evidence did not outweigh the aggravating circumstances, and accordingly sentenced Wiley to death. *Wiley II,* 484 So.2d at 342. Wiley objects that his death sentence is invalid under the Eighth Amendment for two reasons: the "especially heinous" aggravating circumstance was too vague and imprecise to channel the sentencer's discretion, and the robbery and pecuniary gain circumstances were duplicative.

### A. *"Especially Heinous" Aggravating Circumstance*

Nearly two years after Wiley's death sentence became final, the Supreme Court invalidated a death sentence in which the

2. We will describe more fully the district court's holdings in our discussion of those claims presented on appeal.

jury had considered the "especially heinous, atrocious or cruel" aggravating circumstance without being given a limiting instruction. *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). The Court found, first, that the language of the aggravating circumstance was so vague and imprecise as to risk imposition of the death penalty in an arbitrary and capricious manner. *Id.* at 364, 108 S.Ct. at 1859. Second, the Court found that the Oklahoma Court of Criminal Appeals had failed to apply a limiting construction to the vague aggravating circumstance when reviewing the defendant's death sentence. The Oklahoma court's mere conclusion that the evidence supported the jury's finding of the aggravating circumstance was, in the view of the Supreme Court, insufficient to "cure the constitutional infirmity of the aggravating circumstance." *Id. Maynard* was based in large part on *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), in which the Court had identified similar flaws in Georgia's use of the aggravating circumstance that the murder "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." *Id.* at 422, 100 S.Ct. at 1762. As in *Maynard*, the jury in *Godfrey* had been instructed only in the bare words of the statute and the state supreme court failed to apply a limiting construction to the aggravating circumstance when reviewing the death sentence. *See Godfrey*, 446 U.S. at 428–29, 100 S.Ct. at 1765.

Shortly after *Maynard* was decided, the Court was confronted with the question whether, in a weighing state, infection of the capital sentencing determination with a vague aggravating factor required invalidation of the death sentence. In *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Court answered this question in the negative but required that an appellate court reviewing the sentence focus carefully on the role the invalid factor played in the process. As in *Maynard* and the instant case, the *Clemons* jury had not received a limiting instruction further defining the concept of an "especially heinous, atrocious or cruel" killing. Implicit in the opinion was the assumption that this amounted to constitutional error. *See Stringer*, 112 S.Ct. at 1139; *Clemons*, 494 U.S. at 756 n. 1, 110 S.Ct. at 1452, n. 1 (Blackmun, J., concurring in part and dissenting in part). The questions in *Clemons* were whether the Sixth and Eighth Amendments barred the state appellate court from upholding the death sentence despite the jury's use of. a vague aggravating factor and whether, if an appellate court could do so, the Mississippi Supreme Court had conducted the proper analysis of Clemons's sentence.

The Court first concluded in *Clemons* that nothing in the Sixth or Eighth Amendments prevents an appellate court that has invalidated an aggravating factor from reweighing the remaining valid aggravating factors and the mitigating evidence. With respect to the argument that this would infringe on a defendant's jury trial right, the Court pointed out that it had never required "that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence." *Id.* at 745, 110 S.Ct. at 1446.[3] In response to the argument that this would violate the Eighth Amendment, the Court pointed out the numerous ways in which appellate courts become involved in reviewing death sentences[4] and concluded that appellate courts were capable of giving defendants the "individualized and reliable sentencing determination" demanded by the Eighth

---

**3.** This conclusion rested in large part on *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), in which the Court had held that an appellate court can make the findings of intent to kill required under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), for the imposition of a death sentence. The Court also rejected the subsidiary argument that, because Mississippi law permits only a jury to impose a death sentence, allowing the appellate court to do so would transgress a liberty interest in having a jury make all determinations relevant to the sentence. *Clemons*, 494 U.S. at 746–47, 110 S.Ct. at 1447.

**4.** Making *Enmund* findings is a prime example of appellate courts' involvement in the review of capital sentences.

Amendment. *Id.* at 748–49, 110 S.Ct. at 1448.

Having determined that an appellate court could salvage a death sentence by reweighing aggravating and mitigating circumstances, the Court turned its attention to whether the Mississippi Supreme Court actually had done so. At this point, the Court recognized two methods by which the state court could have reweighed, but was not certain which course the state court had taken. The state court might have been reweighing by (1) including in the balance the "especially heinous" factor as limited by prior decisions of the Mississippi Supreme Court or (2) eliminating the "especially heinous" factor altogether and reweighing the remaining valid aggravating circumstance against the mitigating evidence. *Id.* at 751, 110 S.Ct. at 1449. As for the latter, the Court observed that the Mississippi Supreme Court may not have reweighed at all, but simply applied a rule of "automatic affirmance" when at least one valid aggravating factor remains. Such a rule was not, in the Court's view, a proper method of reweighing, as it would not involve an actual reconsideration of the mix of aggravating and mitigating circumstances necessary to satisfy the Eighth Amendment's requirement of individualized sentencing. *Id.* at 752, 110 S.Ct. at 1450. With respect to the former, the Court did not elaborate, but it seems to have been referring to its approval of appellate courts' application of a proper limiting construction to an aggravating circumstance that has been vaguely defined by statute. *See Proffitt v. Florida,* 428 U.S. 242, 255–56, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976) (opinion of Stewart, Powell & Stevens, JJ.) (approving Florida death penalty statute in part because state supreme court adopted limiting construction of "especially heinous" factor).

The Court in *Clemons* also approved of an alternative route to affirmance—harmless error analysis. Again, however, it was not clear whether the Mississippi Supreme Court had done so in its opinion affirming Clemons's death sentence. The Court indicated its approval of two methods of harmless error analysis: the state court could ask whether beyond a reasonable doubt the sentence would have been the same had the vague aggravating circumstance not been injected into the mix, or the court could ask whether beyond a reasonable doubt the sentence would have been the same had the circumstance been properly defined in the jury instructions. *Clemons,* 494 U.S. at 753–54, 110 S.Ct. at 1451; *see also Sochor v. Florida,* —— U.S. ——, 112 S.Ct. 2114, 2123, 119 L.Ed.2d 326 (1992). In remanding, the Court emphasized that state appellate courts are not *required* to reweigh or employ harmless error analysis, but that these are constitutionally permissible methods of salvaging a death sentence based upon an invalid or improperly defined aggravating circumstance. *Clemons,* 494 U.S. at 754, 110 S.Ct. at 1451.

■ *Maynard* and *Clemons* clearly dictate the conclusion that there was constitutional error in instructing the jury in the bare words of the statute. Thus, our first task is to determine whether the Mississippi Supreme Court articulated any constitutionally permissible basis for upholding the death sentence.[5] We agree with Wiley that the Mississippi Supreme Court neither eliminated the "especially heinous" factor from the mix and reweighed the remaining aggravating circumstances against the mitigating evidence, nor engaged in any of the forms of harmless error analysis sanctioned in *Clemons.* Rather, the court, after reciting the limiting construction it had previously adopted for the "especially heinous" factor, merely held that the evidence supported the factor as narrowed. *Wiley II,* 484 So.2d at 353–54. That it did not reweigh or perform harmless error analysis is not surprising. Its decision was rendered in 1986, two years before *Maynard,* and at that time the Mississippi Supreme Court did not find any constitutional infirmity in submitting the "especially heinous" factor to the jury without a limiting in-

---

**5.** To the extent the district court held that the death sentence could automatically be affirmed so long as valid aggravating factors remained, this conclusion was erroneous in light of *Clemons.*

struction. Thus, the court had no need to eliminate an improperly defined factor and reweigh or perform harmless error analysis. *Compare Clemons v. State*, 535 So.2d 1354 (Miss.1988) (post-*Maynard* decision in which court recognized difficulty with "especially heinous" factor), *vacated and remanded*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). Wiley thus argues that, as in *Clemons,* the case must go back to the Mississippi Supreme Court.

■ We cannot agree with the State's contention that the Mississippi Supreme Court cured the sentencing error when it applied its narrowing construction to the "especially heinous" circumstance and found that the evidence supported the finding of the circumstance as narrowed. Without a doubt, the Supreme Court has consistently held that the use of a vague aggravating circumstance poses no Eighth Amendment problem so long as the state appellate courts apply a proper narrowing construction. *See Gregg v. Georgia,* 428 U.S. 153, 201, 96 S.Ct. 2909, 2938, 49 L.Ed.2d 859 (1976) (joint opinion) (Georgia's "outrageously vile" circumstance not vague so long as state supreme court applies limiting construction); *Proffitt,* 428 U.S. at 255, 96 S.Ct. at 2968 (Florida's "especially heinous" circumstance upheld because state supreme court had already adopted limiting construction); *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 3058, 111 L.Ed.2d 511 (1990) (death sentence upheld where state supreme court applied proper narrowing construction to "especially heinous, cruel or depraved" factor); *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 3100, 111 L.Ed.2d 606 (1990) (same). *Cf. Godfrey,* 446 U.S. at 432–33, 100 S.Ct. at 1767 (striking down death sentence where "outrageously vile" circumstance was used because Georgia Supreme Court failed to apply limiting construction); *Maynard,* 486 U.S. at 363–64, 108 S.Ct. at 1859 (Oklahoma Court of Criminal Appeals' failure to apply a limiting construction to

Oklahoma's "especially heinous" factor rendered death sentence infirm). But after *Clemons* and *Stringer,* it is clear that an appellate court must do more than simply find that the aggravating circumstance as limited is supported by the evidence. Rather, once it makes this finding, the appellate court must either perform the weighing function by incorporating in the mix the aggravating circumstance as limited, or it must perform harmless error analysis by asking whether, beyond a reasonable doubt, the death sentence would have been imposed had the aggravating circumstance been properly defined in the jury instructions.[6] Here, all the Mississippi Supreme Court did was set forth its limiting construction of the "especially heinous" factor and then conclude that there was enough evidence in the record to support the factor as limited. It did not perform anything resembling the kind of reweighing or harmless error analysis described above.

*Clemons* and *Stringer* together dictate this result. *Clemons* indicates that the court would have viewed the state supreme court as having reweighed if that court had "reweigh[ed] the mitigating circumstances and both aggravating factors by applying the proper definition to the 'especially heinous' factor." *Clemons,* 494 U.S. at 751, 110 S.Ct. at 1449. Later, in describing its conception of reweighing, the Court pointed out that *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), require the sentencer to consider all mitigating evidence in imposing a death sentence; a failure to reevaluate "the mix of mitigating factors and aggravating circumstances," *Clemons,* 494 U.S. at 752, 110 S.Ct. at 1450 means that the appellate court's review does not qualify as reweighing. Moreover, in speaking of harmless error analysis, the Court in *Clemons* is clear that an appellate court does not simply apply the limiting construction, but must inquire into "*wheth-*

6. Of course, the appellate court may reweigh by eliminating the aggravating factor altogether, and it also may perform harmless error analysis by asking whether, beyond a reasonable doubt, the death sentence would have been imposed had the vague aggravating factor never been submitted to the jury. The options discussed in the text describe the courses an appellate court may follow *if it decides to incorporate the aggravating factor as limited.*

*er beyond a reasonable doubt* the result would have been the same had the especially heinous aggravating circumstance been properly defined in the jury instructions." *Id.* at 754, 110 S.Ct. at 1451 (emphasis added). This imposes a burden which obviously is more exacting than the burden of finding that the evidence supports the narrowed aggravating factor.

*Stringer* makes these points even more clearly by emphasizing the infirmity of a vague aggravating circumstance in a weighing state. *Stringer* initially points out the critical importance in a weighing state of "defin[ing] [aggravating circumstances] with some degree of precision." *Stringer*, 112 S.Ct. at 1136. This is due to the fact that aggravating factors in a weighing state do not simply narrow the class of persons eligible for the death penalty, as in Georgia, but rather lie at the very heart of the sentencer's ultimate decision to impose a death sentence. Consequently,

> [a]lthough we ... held in *Clemons v. Mississippi* that [when the sentencing process is infected with an invalid aggravating factor] a state appellate court could reweigh the aggravating and mitigating circumstances or undertake harmless-error analysis, we have not suggested that the Eighth Amendment permits the state appellate court in a weighing State to affirm a death sentence without a thorough analysis of the role an invalid aggravating factor played in the sentencing process.

*Id.* The Court emphasized this point one paragraph later:

> In order for a state appellate court to affirm a death sentence after the sentencer was instructed to consider an invalid factor, the court must determine what the sentencer would have done ab-

sent the factor. Otherwise, the defendant is deprived of the precision that individualized consideration demands under the *Godfrey* and *Maynard* line of cases.

*Id.* 112 S.Ct. at 1136–37. The key to the requirement of such close appellate scrutiny lies in the nature of weighing. In a system such as Georgia's, the jury uses aggravating circumstances to determine whether the defendant is eligible for death; if it finds at least one, it then considers all the evidence adduced at the guilt-innocence and sentencing phases in determining whether death is the appropriate penalty. *Id.* at 1136; *Zant v. Stephens*, 462 U.S. 862, 872, 103 S.Ct. 2733, 2740, 77 L.Ed.2d 235 (1983). Thus, the jury's use of an invalid aggravating circumstance in determining death-eligibility does not infect the ultimate decision to impose a death sentence and the sentence may be upheld so long as the appellate court determines that the invalid factor made no difference. *See Stringer*, 112 S.Ct. at 1137. In a weighing state, in contrast, the process of determining that death is the appropriate penalty—that is, the weighing process—is skewed when the sentencing body is told that it may include an invalid factor in its decision. "A vague aggravating factor used in the weighing process is in a sense worse [than in the Georgia system], for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory circumstance." *Id.* at 1139. Thus, a court reviewing a death sentence in which the weighing process has been skewed may not simply apply a limiting construction to the factor that has skewed the weighing, but must also reconsider the entire mix of aggravating and mitigating circumstances presented to the jury.[7]

---

7. Our conclusion that a state appellate court may not simply apply a limiting construction to a vague aggravating circumstance is not inconsistent with *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), or *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Both cases involved the Arizona capital sentencing scheme, which, as described by the Supreme Court, appears to be a weighing system. And, in both cases, the Court upheld death sentences in which the sentencer (a trial judge) used Arizona's "especially heinous, cruel or depraved" aggravating circumstance. Even if the trial judge did not apply the limiting construction (as he is presumed to do, *Walton*, 110 S.Ct. at 3057; *Sochor v. Florida*, — U.S. ——, 112 S.Ct. 2114, 2121, 119 L.Ed.2d 326 (1992)), the sentences were not constitutionally

In addition, we cannot agree with the State that the Mississippi Supreme Court actually performed a harmless error analysis. The words "harmless error" are not used in connection with the invalid aggravating factor, and there is no indication that the court gave the kind of "close appellate scrutiny of the import and effect of invalid aggravating factors," *Stringer*, 112 S.Ct. at 1140, that must accompany the modes of harmless error analysis described in *Clemons*. *See Sochor*, 112 S.Ct. at 2123 (a plain statement that a death sentence which incorporates an invalid aggravating factor survives harmless error enquiry is preferable to simply citing cases); *id.* (O'Connor, J., concurring) (*Clemons* requires more than a bald statement that error was harmless).[8]

■ Because only the Mississippi courts can determine the proper approach to Wiley's sentencing, we must vacate the judgment of the district court insofar as it holds that the basing of Wiley's sentence on the "especially heinous" aggravating circumstance did not offend the Eighth Amendment. The district court is, therefore, directed to issue the writ of habeas corpus unless the State of Mississippi initiates appropriate proceedings in state court within a reasonable time after the issuance of our mandate. Because a new sentencing hearing before a jury is not constitutionally required, the State of Mississippi may initiate whatever state court proceedings it finds appropriate, including seeking a life sentence. *Cf. Bullock v. Cabana*, 784 F.2d 187, 187 (5th Cir.1986) (on remand from Supreme Court) (leaving State with choice of obtaining a determination from its own courts of factual question which could be decided by either jury or appellate court); *Reddix v. Thigpen*, 805 F.2d 506, 517 (5th Cir.1986) (same).[9]

Wiley argues that placing this case back in the Mississippi courts will necessarily result in a new sentencing hearing, thus mooting the other claims he raises in this appeal. He contends that the Mississippi Supreme Court's decision in the *Clemons* remand, *Clemons v. State*, 593 So.2d 1004 (Miss.1992), establishes that that court will not perform either the reweighing or harmless error analysis sanctioned by the U.S. Supreme Court, but instead will automatically remand to the state trial court for resentencing. Our analysis of the opinion in the *Clemons* remand, however, indicates that a new sentencing hearing is not abso-

infirm because the Arizona Supreme Court applied an acceptable narrowing construction on direct review. However, the Arizona Supreme Court in both cases did not simply find that the evidence supported the aggravating circumstances as limited; rather, it also reconsidered the mitigating evidence and concluded that there was insufficient mitigating evidence to call for leniency. *Walton*, 110 S.Ct. at 3053; *Jeffers*, 110 S.Ct. at 3097. Thus, the Arizona Supreme Court's review constitutes the kind of reweighing required by *Clemons* and *Stringer*. In the case before us, by contrast, the Mississippi Supreme Court never reconsidered the mitigating evidence against the "especially heinous" circumstance as narrowly construed. This runs afoul of the need to "give defendants the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances." *Clemons*, 494 U.S. at 752, 110 S.Ct. at 1450 (citation omitted).

8. In a final attempt to avoid further proceedings in state court, the State asserts that this court can perform harmless error analysis itself. *Clemons* and *Stringer* are quite clear, however, that any such analysis must be performed by the state courts. *See Clemons*, 494 U.S. at 752, 110 S.Ct. at 1450; *Stringer*, 112 S.Ct. at 1136; *see also Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (state appellate courts could apply harmless error analysis when reviewing death sentence imposed by judge who relied in part on invalid aggravating factor).

9. We note that, although the district court in this habeas proceeding cannot remand directly to the Mississippi Supreme Court as did the U.S. Supreme Court in the direct appeal in *Clemons*, Mississippi procedures permit the State to place a case directly before the Mississippi Supreme Court when a federal district court has granted a writ of habeas corpus and left to the State the task of initiating appropriate proceedings. In *Reddix* and *Bullock*, two habeas cases in which the federal court vacated the petitioners' death sentences in order to enable the state courts to make factual findings necessary for imposition of the death penalty, but in which the relevant findings could be made at either the trial or appellate level, the State made a motion to reinstate the death sentence directly in the Supreme Court of Mississippi. *Reddix v. State*, 547 So.2d 792, 794 (Miss.1989); *Bullock v. State*, 525 So.2d 764, 765 (Miss.1987).

lutely required under state law. Therefore, because Wiley may again receive a death sentence based on the 1984 sentencing trial, we will, in the interest of judicial economy, consider Wiley's claims arising out of that proceeding.

Wiley is correct only about the Mississippi Supreme Court's view on the propriety under state law of reweighing. In its recent decision in *Clemons v. State,* the Mississippi Supreme Court held that state law precludes it from reweighing aggravating and mitigating factors to determine whether the death penalty is warranted. Analyzing Miss.Code Ann. § 99–19–101, which provides that the jury imposes the death penalty, and Miss.Code Ann. § 99–19–105, which sets forth criteria for review of death sentences by the Mississippi Supreme Court, the court held:

> From these statutory provisions, two things are clear: only the jury, by unanimous decision, can impose the death penalty; as to aggravating circumstances, this Court only has the authority to determine whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance. There is no authority for this Court to reweigh remaining aggravating circumstances when it finds one or more to be invalid or improperly defined, nor is there authority for this Court to find evidence to support a proper definition of an aggravating circumstance in order to uphold a death sentence by reweighing. Finding aggravating and mitigating circumstances, weighing them, and ultimately imposing a death sentence are, by statute, left to a properly instructed jury.

593 So.2d at 1006; *see also Shell v. State,* 595 So.2d 1323 (Miss.1992) (vacated and remanded in light of *Clemons;* court held state law precluded reweighing); *Jones v. State,* 602 So.2d 1170 (Miss.1992) (same); *Pinkney v. State,* 602 So.2d 1177 (Miss. 1992) (same).

---

**10.** The Mississippi Supreme Court reached similar conclusions in the *Shell, Jones* and *Pinkney* remands.

The court in the *Clemons* remand and the above cited cases did not, however, find that state law precluded it from performing harmless error analysis. In *Clemons,* the court essentially concurred in the view of the U.S. Supreme Court that use of the invalid aggravating factor was not likely to be harmless beyond a reasonable doubt in Clemons' sentencing, where only two aggravating circumstances were argued to the jury and the State's argument at sentencing was devoted almost entirely to the "especially heinous" circumstance. Moreover, the Mississippi Supreme Court found that the error was not harmless beyond a reasonable doubt because it was not convinced that the jury would have found the "especially heinous" factor had it been properly defined in the jury instructions. *Id.* at 1007.[10] Nothing in the opinion, however, suggests that a harmless error analysis is not permitted under state law. The Mississippi Supreme Court actually asked whether the error was harmless beyond a reasonable doubt, but found that it was not. Thus, although it remanded to the state trial court for resentencing in *Clemons* and three subsequent cases, there is no guarantee that it would do so in this case. Accordingly, returning this case to the Mississippi courts will not necessarily moot Wiley's other federal claims. We proceed now to consider those claims.

### B. *Robbery and Pecuniary Gain Aggravating Circumstances*

Wiley levels a second challenge to the use of aggravating circumstances. He contends that, in considering the "robbery" and "pecuniary gain" circumstances, the jury "was encouraged to double the aggravating weight of evidence already fully considered in the context of another statutory aggravating circumstance." He contends that the use of two aggravating circumstances that described the same conduct[11] failed to channel and limit the jury's

---

**11.** Murder for pecuniary gain could refer to conduct different than murder committed in the course of a robbery, as the former may encompass murder-for-hire. In this case, there were

discretion to impose the death sentence, and therefore resulted in an arbitrary death sentence in violation of the Eighth Amendment.

█ A number of state courts have expressed disapproval of the use of both the "robbery" and "pecuniary gain" aggravating factors when both would apply to the same conduct, including (as of 1991) Mississippi.[12] These courts have not found this result dictated by the Eighth Amendment, but instead have relied on state law. If Wiley were relying purely on state law in raising this claim, we would agree with the State that our consideration of the claim is barred. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). But Wiley has raised federal constitutional objections, so our powers as a federal habeas court are properly invoked. Having said that, there is an independent bar to our consideration of this claim: Wiley asks us to create a "new rule" within the meaning of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and apply it retroactively to him, and he does not come within either of the exceptions to the *Teague* doctrine.[13]

Under *Teague*, new rules of constitutional criminal procedure will not be announced on federal habeas review unless one of two narrow exceptions applies. 489 U.S. at 311–13, 109 S.Ct. at 1075–77; *Saffle v. Parks*, 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990); *Penry v. Lynaugh*, 492 U.S. 302, 313, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989). In the now-familiar parlance, " 'a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.' Or, '[t]o put it

differently, a case announces a new rule if the result was not. *dictated* by precedent existing at the time the defendant's conviction became final.' " *Penry*, 492 U.S. at 314, 109 S.Ct. at 2944 (citing *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070) (brackets in *Penry;* emphasis in *Teague* ); *see also Butler v. McKellar*, 494 U.S. 407, 412, 110 S.Ct. 1212, 1216, 108 L.Ed.2d 347 (1990); *Stringer*, 112 S.Ct. at 1135. These principles primarily serve federalism concerns: they validate state courts' reasonable, good faith reliance on precedents existing at the time they rendered their decisions, *Butler*, 494 U.S. at 414, 110 S.Ct. at 1217, and reduce the tendency of federal habeas review to undermine the finality of state criminal convictions. *See Teague*, 489 U.S. at 308–09, 109 S.Ct. at 1074.

Although Wiley spends very little time arguing this claim in his brief[14] and cites no cases in support of the rule he seeks, we perceive his claim to be based on the well-established principle that, when the proposed penalty is death, the sentencer's discretion must be channelled and limited so to as to avoid imposition of the penalty in a "wanton or freakish" manner. *Gregg*, 428 U.S. at 188–89, 96 S.Ct. at 2932 (quoting *Furman v. Georgia*, 408 U.S. 238, 310, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring)); *see also Stephens*, 462 U.S. at 874, 103 S.Ct. at 2741; *Walton*, 110 S.Ct. at 3061 (Scalia, J., concurring in part and concurring in the judgment) (listing the many ways the Court has described this basic principle). Saying that his claim is "based on" this principle, however, is not the same as saying his claim is dictated by precedent. A death-sentenced petitioner could raise any number of objec-

no instructions differentiating among the two, and under the facts of the case both could only refer to the same conduct.

**12.** *Cook v. State,* 369 So.2d 1251, 1256 (Ala. 1978); *People v. Bigelow,* 37 Cal.3d 731, 209 Cal.Rptr. 328, 691 P.2d 994, 1006 (1984); *Provence v. State,* 337 So.2d 783, 786 (Fla.1976), *cert. denied,* 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977); *Willie v. State,* 585 So.2d 660, 680–81 (Miss.1991); *State v. Rust,* 197 Neb. 528, 250 N.W.2d 867, 873–74 *cert. denied,* 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977);

*State v. Glidewell,* 663 P.2d 738, 743 (Okla.Crim.App.1983).

**13.** The retroactivity issue was not raised by the State, but, as did the Court in *Teague,* 489 U.S. at 300, 109 S.Ct. at 1069, we may consider it *sua sponte. Smith v. Black,* 904 F.2d 950, 981 n. 12 (5th Cir.1990), *vacated and remanded on other grounds,* ── U.S. ──, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992).

**14.** It was not raised at oral argument.

tions to the use of aggravating circum-. stances and contend that all flow from the basic Eighth Amendment narrowing requirement. Were a habeas petitioner able to spark creation of a new rule simply by invoking *Gregg* and its progeny, the practical limits the Court has placed on retroactive application of new rules would be all but eviscerated in the Eighth Amendment capital sentencing context.

In order for Wiley's sought-after rule not to be considered new, we think it must be dictated by precedent more specific than *Gregg* and the cases repeating its essential principle. In the only Supreme Court case holding that a rule which ultimately derived from the *Gregg* principle was *not* a new rule, the Court did not base its decision on *Gregg* or the generalized requirement that state capital sentencing statutes narrow the class of persons eligible for the death penalty, but instead on a more particularized application of the *Gregg* principle. The case to which we refer, of course, is *Stringer*, and it found the invalidation in *Maynard v. Cartwright* and *Clemons v. Mississippi* of the "especially heinous" aggravating circumstance dictated by *Godfrey v. Georgia*. *Godfrey* was a specific application of the narrowing requirement in which the Court held that the Georgia system's threshold criterion for imposing a death sentence must be defined with precision either in the jury instructions or by the state appellate court reviewing the sentence. Thus, *Stringer* does not suggest to us that the relevant precedent is the broad-based *Gregg* principle, but rather some precedent that would speak to the constitutionality of giving the jury in a weighing state multiple, identical aggravating circumstances. *Cf. Penry*, 492 U.S. at 315–19, 109 S.Ct. at 2944–47 (requested rule that Texas juries be given special instruction on ability to consider mitigating evidence is not new, because the Texas capital sentencing scheme had been upheld in 1976 on the specific understanding that the statute would not preclude presentation of mitigating evidence); *Saffle*, 494 U.S. at 491–92, 110 S.Ct. at 1262 (*Penry* was an application of the specific precedent of *Jurek*).

We can find no precedent that will assist Wiley. The Court's only specific extension of the *Gregg* principle has come in the *Godfrey–Maynard–Clemons* line of decisions, a group of cases which speak to the importance of precision in defining aggravating circumstances in both weighing and non-weighing states and to the consequences for appellate review of imprecisely defined circumstances. *Godfrey, Maynard* and *Clemons* (all of which are available to Wiley) provide no basis for the sought-after rule here, for Wiley is not claiming that the robbery and pecuniary gain aggravating circumstances were invalid, improperly defined, or imprecise. Rather, he simply raises a broad-based claim that "stacking" of identical, valid aggravating circumstances will impermissibly influence the jury in a weighing state toward returning a death sentence. Were we to grant Wiley the relief he seeks we would necessarily "break new ground," so the rule must be classified as new. *Cf. Saffle*, 494 U.S. at 490, 110 S.Ct. at 1261 (rule which would preclude sentencing jury from being told to avoid any influence of sympathy relates to *how* sentencer must consider mitigating evidence, not *what* evidence it may consider, and so is not dictated by the *Lockett–Eddings* principle).

Neither of the two exceptions to the new rule doctrine helps Wiley. The first exception applies when a new rule "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe'[.]" *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075 (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)). It requires no extended discussion to show why the rule Wiley seeks would not put any individual conduct beyond the authority of government to proscribe. The second exception applies to procedural rules which are critical to an accurate determination of guilt or innocence. *Id.* 489 U.S. at 312, 109 S.Ct. at 1076. This exception, too, is obviously inapplicable. Accordingly, because Wiley asks us to apply a new rule to him on

habeas, we cannot reach the merits of the claim.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Wiley argued in the district court that he received ineffective assistance of counsel at both the guilt and sentencing phases, but on appeal he confines his claim to the sentencing phase. He asserts that an evidentiary hearing is necessary to resolve disputed facts concerning his representation. A federal habeas court must hold an evidentiary hearing if there are disputed facts and the petitioner did not receive a full and fair hearing in a state court, either at trial or in a collateral proceeding. *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963), *overruled in part on other grounds, Keeney v. Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (U.S. May 4, 1992). This standard applies equally to ineffective assistance of counsel claims. If the record is adequate to dispose of the claim, the federal court need not hold an evidentiary hearing. *Byrne v. Butler,* 845 F.2d 501, 512 (5th Cir.), *cert. denied,* 487 U.S. 1242, 108 S.Ct. 2918, 101 L.Ed.2d 949 (1988); *see also Paster v. Lynaugh,* 876 F.2d 1184, 1190 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 272, 107 L.Ed.2d 177 (1990); *Baldwin v. Maggio,* 704 F.2d 1325, 1329 (5th Cir.1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984).

We review claims of ineffective assistance of counsel at capital sentencing trials under the two-part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688, 104 S.Ct. at 2065. We are "highly deferential" to counsel's decisions about how to conduct the defense, as it is extremely difficult for reviewing courts to place themselves in counsel's position and evaluate the choices he or she should have made. The range of attorney conduct that must be considered reasonable is thus quite wide, and our inquiry must focus on the particular decisions an attorney made in light of all the circumstances. *Id.* at 689–90, 104 S.Ct. at 2065–66. This standard applies no less to an attorney's duty to investigate than to the other duties associated with trial: "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91, 104 S.Ct. at 2066. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. A court evaluating a claim of ineffective assistance need not address the reasonableness component first, and, if a defendant fails on one part, the court need not address the other. *Id.* at 697, 104 S.Ct. at 2069.

■ The essence of Wiley's claim is that his appointed counsel at the guilt-innocence trial and both sentencing trials, James D. Franks, conducted a woefully inadequate investigation of mitigating evidence. At the second sentencing trial, Franks called no witnesses in Wiley's behalf, choosing instead to present mitigating evidence entirely through the cross-examination testimony of the State's witnesses. Franks elicited testimony from Terry Galt, a coworker of Wiley at the time of the crime, that Wiley was not a troublemaker and did not display violent tendencies. Turner's wife and daughter, both of whom knew Wiley from Wiley's visits to the convenience store, also testified that they had not seen Wiley act violently. In cross-examining Mike Allen, a State forensic scientist and the State's firearms expert, Franks attempted to cast doubt on the State's theory that Wiley was moving toward Turner when he fired the shotgun,

thereby indicating a lack of intent to kill. James Riley, chief deputy sheriff of DeSoto County, testified that Wiley accepted blame for the crime, was a model prisoner, and cooperated in the law enforcement investigation. According to an affidavit Franks filed in connection with Wiley's habeas petition, Franks questioned Wiley about witnesses that might appear on his behalf, but Wiley "did not give me any names."

Wiley asserts that Franks unreasonably failed to investigate his background, character and mental condition, and that he failed to locate witnesses who could have bolstered the evidence that Wiley had no history of violence or criminal behavior. He contends that Franks could have obtained a considerable amount of evidence that would have related directly to the mitigating circumstances enumerated in the Mississippi capital sentencing statute, such as mental impairment and diminished capacity. *See* Miss.Code Ann. § 99–19–101(6)(b), (f) (Supp.1991). In his petition, he proffered affidavits in which friends and family in the DeSoto County area stated that they would have testified on Wiley's behalf had they been contacted; Army and school records; and the affidavits of a psychologist (Dr. Billy Fox) and a psychiatrist (Dr. Robert Ritter) who examined Wiley in 1987. Dr. Fox stated that he diagnosed Wiley as suffering from borderline mental retardation, alcoholism and drug dependency, and passive/aggressive personality disorder. Dr. Ritter's diagnosis was similar. Both stated that, had they been called to testify at the sentencing trial, they would have been able to present a psychological profile of Wiley which would help explain his crime and make him appear more sympathetic to the jury.

On the basis of this record, Wiley is not entitled to a federal evidentiary hearing. His own affidavit and Franks's affidavit are not in conflict on the basic fact that Wiley did not bring to Franks's attention any of the potentially mitigating evidence now in the habeas record. Wiley's affidavit states: "Mr. Franks did not fully explain to me that it was important for people who knew me to testify at the sentencing hearing. Mr. Franks only asked me a general question about whether there was anyone who would help in my defense." Franks's affidavit states: "I questioned Mr. Wiley about witnesses that might appear on his behalf but he did not give me any names." At only one point does Wiley acknowledge providing Franks with information that might be mitigating: "I told Mr. Franks about my abuse of alcohol, speed and pot before the alleged crime." There is absolutely no suggestion in any of Wiley's submissions, however, that there was any reason for Franks to suspect the existence of mental impairment. There is no indication that Wiley had ever been examined by mental health professionals prior to the sentencing trial, that he had been diagnosed as suffering from any particular disorder, or that his personality was such that a reasonable person would have thought mental impairment a promising line of defense.

Investigations into mitigating circumstances may reasonably be limited where the defendant fails to call witnesses to his lawyer's attention. *See Burger v. Kemp*, 483 U.S. 776, 794–95, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987) (counsel's interview of only those witnesses called to his attention was reasonable). Our cases, too, have recognized that a defendant who does not provide any indication to his attorneys of the availability of mitigating evidence may not later assert an ineffective assistance claim. For example, in *Byrne*, the habeas petitioner complained of his attorneys' failure to discover evidence of an underlying mental disorder. Assuming for the sake of argument that Byrne in fact suffered from a mental disorder which could have mitigated the death sentence, we held that "Byrne must still demonstrate ... that his attorneys had some indication that mental impairment might prove a promising line of defense." 845 F.2d at 513 (citations omitted). But Byrne, like Wiley, "[did] not allege that he intimated to his attorneys that he was suffering from a mental disorder." *Id.* Similarly, in *James v. Butler*, 827 F.2d 1006 (5th Cir.1987), *cert. denied*, 486 U.S. 1046, 108 S.Ct. 2044, 100 L.Ed.2d 628 (1988), we rejected an ineffectiveness

claim where the petitioner did not alert counsel to the possibility of a defense based on mental impairment due to drugs.

This is not a case like *Loyd v. Smith*, 899 F.2d 1416 (5th Cir.1990), where, despite the fact that the petitioner had been subject to a sanity examination prior to trial, his lawyers failed to investigate his mental impairments any further prior to the sentencing hearing and failed to obtain an independent psychiatric examination to fill in acknowledged "gaps in the record." *Id.* at 1421. Also distinguishable is *Wilson v. Butler*, 813 F.2d 664 (5th Cir.1987), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988). There, we held that an evidentiary hearing on an ineffectiveness claim was necessary where the petitioner alleged that his father had alerted defense counsel to the petitioner's "problems" dating from childhood. *Id.* at 669, 671. We found that this information was sufficient to require competent counsel to further investigate the petitioner's background. *Id.* at 671; *see also Profitt v. Waldron*, 831 F.2d 1245 (5th Cir.1987) (counsel ineffective where he knew defendant had escaped from a mental institution, but did not determine why defendant had been in the institution).

Franks's decision to limit his investigation of potential mitigating evidence to State's witnesses is reasonable to the extent it was supported by a reasonable professional judgment about how to conduct the defense. *Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066. Because nothing alerted Franks to the possibility of mental impairment as a mitigating factor, we find the decision not to obtain a psychiatric evaluation entirely reasonable. Wiley asserts that he told Franks that he had been under the influence of drugs and alcohol, but this meager information alone would not require the full-scale investigation Wiley suggests was necessary. Although we are of the view that counsel could have made an effort to locate friends and family who could have testified about Wiley's favorable qualities, " '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.' " *Burger*, 483 U.S. at 794, 107 S.Ct. at 3126 (citing *United States v. Cronic*, 466 U.S. 648, 665 n. 38,

104 S.Ct. 2039, 2050 n. 38, 80 L.Ed.2d 657 (1984)). Wiley and Franks agree that Wiley did not provide Franks with any leads on witnesses. Franks could reasonably have concluded that the most promising line of defense at the sentencing trial was to force the State's witnesses to tell the jury about Wiley's history of nonviolence, cooperation in the investigation, good behavior as a prisoner, and acceptance of blame for the crime. He could also reasonably have concluded, as the state court noted, that introducing evidence of any adverse psychological background would have contradicted his attempt to portray Wiley as basically a nonviolent person who had no intent to kill Turner. *See Wiley III*, 517 So.2d at 1380. In sum, we do not find that Franks's decisions at Wiley's second sentencing trial were unreasonable, and so we do not address the prejudice component of the inquiry.

## IV. BATSON CLAIM AND IMPROPER PROSECUTORIAL COMMENTS

Wiley asserted in his petition that the prosecutor improperly exercised his peremptory challenges to exclude all but one black from the jury venire, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He also asserted that the prosecutor violated his due process rights by introducing a materially inaccurate transcript of Wiley's confession and twice reading the erroneous language in rebuttal closing argument, and by making improper remarks in the closing argument about the brutality of the murder. Wiley did not object at trial to the peremptory challenges or to the prosecutor's closing argument. He did object to the transcript, but did not raise any issue with respect to the transcript on direct appeal. On collateral review, the Mississippi Supreme Court stated that Wiley's failure to raise the three issues listed above at trial or on direct appeal rendered the claims "procedurally barred and not subject to further review by this Court, under Miss. Code Ann. § 99–29–21. *Wilcher v. State*, 479 So.2d 710 (Miss.1985)." *Wiley III*, 517 So.2d at 1378.

The district court found that the Mississippi Supreme Court, the last state court to address Wiley's claims, had clearly and expressly relied on a procedural bar erected by state law in rejecting these claims. *See Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1044, 103 L.Ed.2d 308 (1989). Accordingly, the district court held, Wiley could not obtain federal review of these claims unless he showed "cause" for defaulting them in state court and resulting prejudice. *See id.* at 262–63, 109 S.Ct. at 1043; *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Wiley attempted to circumvent the procedural bar with respect to the *Batson* and closing argument claims on the ground that his counsel's ineffectiveness was cause for failing to object, and, alternatively, attempted to avoid the procedural bar altogether by arguing that the Mississippi courts did not consistently apply the bar.[15] The district court rejected both arguments. On appeal, Wiley concedes the state court's reliance on a procedural bar but reurges his two arguments for disregarding it.

A. Batson *Claim*

Because Wiley's conviction had not yet become final at the time *Batson* was decided, he is not precluded from taking advantage of the decision. *See Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (*Batson* applies retroactively to cases pending on direct review in state courts). However, it is settled in this circuit that a timely objection to the prosecutor's peremptory challenges is essential to a *Batson* claim. *Thomas v. Moore,* 866 F.2d 803, 805 (5th Cir.), *cert. denied,* 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989); *Jones v. Butler,* 864 F.2d 348, 369 (5th Cir.) (on petition for rehearing), *cert.*

*denied,* 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989); *see also Wilkerson v. Collins,* 950 F.2d 1054, 1063 (5th Cir.1992), *petition for cert. filed,* No. 91–7669 (U.S. March 18, 1992). This is so because of the difficulty inherent in a *post hoc* attempt to determine the reasons behind a prosecutor's challenges. *Id.* at 369–70. Under the reasoning of *Thomas* and *Jones,* cause for failing to object and resulting prejudice cannot rescue the claim. However, because the Mississippi Supreme Court relied on a state procedural bar we think it appropriate (although not required) to address Wiley's cause and prejudice arguments in the alternative.

B. *Ineffective Assistance of Counsel as Cause for Defaulting on the* Batson *and Closing Argument Claims*

■ The Supreme Court fleshed out the concept of "cause" for a procedural default in *Carrier,* holding that cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." 477 U.S. at 488, 106 S.Ct. at 2645. Without excluding other possible ways a petitioner could make this showing, the Court noted that a lack of reasonable availability of the factual or legal basis for a claim or the existence of interference by state officials would satisfy the standard. *Id.* Because the Sixth Amendment prevents states from conducting trials at which defendants receive inadequate legal assistance, the Court held, "[i]neffective assistance of counsel . . . is cause for a procedural default." *Id.; see also Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (ineffective assistance is cause when default occurs in proceedings in which petitioner had constitutional right to counsel).[16]

---

**15.** Wiley did not argue that he had cause for failing to raise the transcript claim on direct appeal. The only ground he asserted for avoiding the procedural bar with respect to that claim was Mississippi's inconsistent application of the bar.

**16.** The standards of *Strickland* apply fully in this context. *Carrier,* 477 U.S. at 488, 106 S.Ct.

at 2645. In addition, in order to use ineffective assistance to establish cause, a petitioner must first exhaust it as an independent constitutional claim in state court. *Id.* at 489, 106 S.Ct. at 2646. Wiley has properly exhausted a claim of ineffective assistance of counsel for failing to raise a *Batson* claim and for failing to object to the prosecutor's closing argument. *See Wiley III,* 517 So.2d at 1380–81.

With respect to the *Batson* claim, *Batson* had not yet been decided when Wiley's second sentencing trial took place. Wiley suggests, however, that his counsel's failure to object was unreasonable because the basis for a challenge to the prosecutor's conduct was established in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The Court's description in *Batson* of the fatal flaw in the *Swain* decision undercuts this contention. In order to make out a violation of the Equal Protection Clause under *Swain*, a defendant was required to show that prosecutors repeatedly exercised peremptory challenges to remove blacks who had been selected as qualified jurors and who survived challenges for cause. *See Batson*, 476 U.S. at 92, 106 S.Ct. at 1720. Since the lower courts' interpretation of *Swain* "ha[d] placed on defendants a crippling burden of proof, prosecutors' peremptory challenges [were] largely immune from constitutional scrutiny." *Batson*, 476 U.S. at 92–93, 106 S.Ct. at 1721 (footnote omitted); *see Willis v. Zant*, 720 F.2d 1212, 1220 (11th Cir.1983) (winning *Swain* claims extremely difficult), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3546, 3548, 82 L.Ed.2d 849, 851 (1984). Wiley's counsel, like countless other defense attorneys laboring under the onerous proof burdens required by *Swain*, undoubtedly decided that he was unlikely to mount a successful constitutional challenge to the prosecutor's peremptory challenges. We must view this strategic decision as reasonable under the standards articulated in *Strickland*. *See Poole v. United States*, 832 F.2d 561, 565 (11th Cir.1987) (attorney not ineffective for failing to raise *Batson* claim before decision because case was a clear break with precedent), *cert. denied*, 488 U.S. 817, 109 S.Ct. 54, 102

L.Ed.2d 33 (1988); *cf. Government of Virgin Islands v. Forte*, 865 F.2d 59, 62–63 (3d Cir.1989) (counsel's failure to raise *Batson* claim was ineffective only because defendant asked him to object in light of fact that *Batson* was pending). Consequently, ineffective assistance of counsel does not function as cause for Wiley's failure to comply with the state's contemporaneous objection rule.

█ We can more easily dispose of the argument that ineffective assistance underlies the default of the closing argument claim. The prosecutor referred to the brutality of the murder, undoubtedly focusing the jury on the then-legal "especially heinous, atrocious or cruel" aggravating circumstance. This sort of approach in a closing argument is not by any means an obvious constitutional violation, particularly in light of the evidence adduced at the sentencing trial. *See Mattheson v. King*, 751 F.2d 1432, 1445–46 (5th Cir.1985) (prosecutor's reference to victim's head as having been blown off and into the ceiling did not render trial unfair, in light of evidence at trial), *cert. dism'd*, 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986). Indeed, the prosecutor's closing argument was not nearly as graphic as that in *Mattheson*, consisting instead of an expression of horror at the nature of the crime and an exhortation to the jury to ensure that Wiley did not kill again. Franks could reasonably have decided not to risk antagonizing the jury by objecting, or he could have decided that his best strategy was to let his own closing argument (recited before the State's) speak for itself. Whatever the reason he chose not to object, we do not view his conduct as ineffective assistance. Thus, Wiley has not established cause for failing to object to the closing argument.[17]

17. With respect to the *Batson* claim, Wiley also suggests that we disregard the bar of the contemporaneous objection rule altogether. Not only does the bar "serve no legitimate state interest," Wiley says, requiring a contemporaneous objection where settled law bars a challenge to a prosecutor's use of peremptories would merely encourage needless delay. We disagree for two reasons. First, the Supreme Court has made it quite clear that in the habeas context, a state's application of a procedural rule to bar review is an adequate and independent ground

supporting the state judgment. *See Coleman*, 111 S.Ct. at 2554; *Harris*, 489 U.S. at 262, 109 S.Ct. at 1044; *Sykes*, 433 U.S. at 81, 87, 97 S.Ct. at 2503, 2506. Given the concerns of "comity and federalism" which support the independent and adequate state ground doctrine in habeas, *Coleman*, 111 S.Ct. at 2554, we are not at liberty to disregard a particular state rule even if we disagree with its utility in a particular case. Second, to the extent that Wiley is arguing that he had cause for the procedural default because

## C. Inconsistency of Mississippi's Application of the Procedural Bar

Wiley next relies on the principle that a state court's invocation of a procedural bar will not preclude federal review where the state courts do not regularly apply the rule cited as the bar. *See Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). The district court, relying on *Hill v. Black*, 887 F.2d 513 (5th Cir.1989), *vacated on other grounds*, —— U.S. ——, 111 S.Ct. 28, 112 L.Ed.2d 6 (1990), held that the Mississippi courts regularly apply the contemporaneous objection rule as a procedural bar, and thus held the state procedural bar effective.

In invoking a procedural bar to eliminate consideration of the *Batson*, closing argument and transcript claims, the Mississippi Supreme Court simply listed the claims and then cited the rule barring claims not objected to at trial or raised on direct appeal. It is important here, however, to distinguish between the separate grounds of contemporaneous objection and failure to raise a claim on direct appeal, for Wiley did raise an objection at trial to the prosecutor's use of the transcript. Thus, we perceive the Mississippi Supreme Court to have rejected the *Batson* and closing argument claims due to Wiley's failure to object at trial, and to have rejected the transcript claim for failing to raise it on direct appeal. As we discuss below, this court has reached different conclusions about the consistency of these two different procedural bars. In *Hill*, we found that "the Supreme Court [of Mississippi] regularly applies the contemporaneous objection rule to the cases before it." 887 F.2d at 516. It is true, as Wiley points out, that the Mississippi Supreme Court may disregard the procedural bar rule when plain error exists. But we acknowledged this practice in *Hill* and did not find that it detracted from the consistency of Mississippi's application of the rule. *Hill*, 887 F.2d at 516.[18] *Johnson* does not help Wiley overcome the contemporaneous objection bar, because the inconsistency identified in *Johnson* arose in only one limited context: the failure of a defendant to challenge on direct appeal a conviction that forms the basis for an enhanced sentence or supports an aggravating circumstance in a capital sentencing. *Johnson* does not speak at all to the contemporaneous objection rule, so we are bound by *Hill* to respect Mississippi's application of that rule.

The bar of failure to raise a claim on direct appeal is a different matter. In *Wheat v. Thigpen*, 793 F.2d 621 (5th Cir. 1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987), we found that the Mississippi Supreme Court announced this rule in 1983 and then followed it that

the factual or legal basis for a *Batson* claim was not reasonably available at the time of his sentencing hearing in June 1984, we cannot agree. If this were the case, of course, it would constitute cause for the procedural default. *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984); *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. But *Swain*'s condemnation of race-based peremptory challenges certainly raised the possibility that one might prevail on the courts to find a constitutional violation under a less onerous burden of proof than required by *Swain* itself. "*Swain* should have warned prosecutors that using peremptories to exclude blacks on the assumption that no black juror could fairly judge a black defendant would violate the Equal Protection Clause." *Batson*, 476 U.S. at 101, 106 S.Ct. at 1725 (White, J., concurring). Defense attorneys, too, were alerted to the constitutional problem and could (but were not necessarily required to) lodge an objection. *Cf. McCray v. Abrams*, 750 F.2d 1113, 1124–30 (2d Cir.1984), *reh'g en banc denied*, 756 F.2d 277 (1985), *vacated and remanded*, 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986).

18. Although we went on to discuss the substantive merits of the claims the Mississippi Supreme Court had held procedurally barred in *Hill*, we did so in order to illustrate that the district court had erred in granting the writ on the ground that Mississippi applied the rule inconsistently. We pointed out that "neither [claim] would have justified the Mississippi Supreme Court in applying the exception to the Mississippi contemporaneous objection rule to either allegation of error. Accordingly, the district court erred in granting habeas corpus relief based on the Mississippi Supreme Court's application of the Mississippi procedural bar rule." *Hill*, 887 F.2d at 518.

year in four additional cases.[19] However, we found that the court in 1985 considered a claim in a collateral proceeding that had not been raised on direct appeal. *Id.* at 626.[20] We therefore concluded that "the Mississippi Supreme Court had not clearly announced or strictly or regularly followed the procedural bar at the time of Wheat's direct appeal," *id.* at 627, and so proceeded to consider the purportedly barred claim on the merits. *Wheat* was adhered to in *Reddix v. Thigpen,* 805 F.2d 506, 510 (5th Cir.1986); *Edwards v. Scroggy,* 849 F.2d 204, 209 n. 4 (5th Cir.1988), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 597 (1989); and *Smith v. Black,* 904 F.2d 950, 971 (5th Cir.1990), *vacated on other grounds,* —— U.S. ——, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992), three cases in which direct appeal and collateral review in the Mississippi courts took place before 1985.

Wiley's direct appeal of his sentence took place in 1986, and the decision on collateral review applying the procedural bar was handed down in late 1987. This might suggest that the court reverted to the rule it stated it intended to enforce in 1983. A contrary answer is suggested by the Mississippi Supreme Court's disregard of the direct appeal bar in at least one case decided subsequent to Wiley's collateral review: in *Clemons v. State,* 535 So.2d 1354 (Miss. 1988), *vacated on other grounds,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the court considered a challenge to the "especially heinous" aggravating circumstance that was not raised on direct appeal, stating that it would do so because of the recent decision in *Maynard v. Cartwright* and because of its statutory obligation to review death sentences. *Clemons,* 535 So.2d at 1362. However, it is arguable that the Mississippi Supreme Court's reluctance to impose the procedural bar in *Clemons* may be based on, and hence may be limited to, the court's statutory duty to review death sentences for the influence of passion, prejudice or other arbitrary factors,

and for proportionality. *See* Miss.Code Ann. § 99–19–105(3) (1972 & Supp.1991). We need not decide whether Mississippi regularly enforced its direct appeal bar at the time of Wiley's collateral review with respect to the class of claims presented here, for, as we discuss below, our review of the merits of the transcript claim convinces us that any error was harmless beyond a reasonable doubt.

### D. *Merits of the Transcript Claim*

In his confession, Wiley told the police "I just shot up, but I definitely hit him." Because the audio tape of the confession was difficult to hear, the State transcribed it. The transcript omitted the word "up" from the passage quoted above. Wiley contends that constitutional error occurred when the prosecutor introduced the incorrect transcript and twice read from it in rebuttal closing argument. Wiley has not suggested how error of a magnitude sufficient to require reversal arose from this slight misstatement. Perhaps inclusion of the word "up" would, if the jury attached a spatial meaning, detract from the conclusion that Wiley intended to kill. In view of the other evidence in this case (including the balance of Wiley's confession), we have no trouble concluding that any error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## V. EVIDENCE ABOUT THE VICTIM

■ Wiley argues that the admission of evidence about the character and worth of the victim, including his reputation in the community as a generous person and his relationship with his family, violated his right to a fair trial. Wiley repeatedly objected at trial and raised the issue on direct appeal, but the Mississippi Supreme Court rejected his claim. *Wiley II,* 484 So.2d at 348. The court refused to consider the

---

**19.** The rule was announced in *Wheat v. Thigpen,* 431 So.2d 486 (Miss.1983), and followed in *King v. Thigpen,* 441 So.2d 1365 (Miss.1983); *Evans v. State,* 441 So.2d 520 (Miss.1983); *cert. denied,* 467 U.S. 1264, 104 S.Ct. 3558, 82 L.Ed.2d 860 (1984); *Smith v. State,* 434 So.2d 212 (Miss.

1983); and *Edwards v. Thigpen,* 433 So.2d 906 (Miss.1983).

**20.** The inconsistent case was *Caldwell v. State,* 481 So.2d 850 (Miss.1985).

claim because of the res judicata principles applicable on collateral review. *Wiley III,* 517 So.2d at 1377.

Claims concerning evidence of this sort are now governed by *Payne v. Tennessee,* — U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).[21] The Court in *Payne* observed that "[i]n the majority of cases, . . . victim impact evidence serves entirely legitimate purposes." Thus, "[a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether the death penalty should be imposed." *Id.* 111 S.Ct. at 2608–09. Victim impact evidence is constitutionally acceptable so long as it is not "so unduly prejudicial that it renders the trial fundamentally unfair." *Id.* at 2608.

The evidence to which Wiley objects came from Turner's wife, Marie. She testified about the places she and her husband had lived in Mississippi, his operation of the store, her assistance in the law enforcement investigation, and Turner's character. She agreed that Turner was not a violent or mean person, that he was known in the community as "Mr. Good Buddy," and that he occasionally loaned small amounts of money. This evidence hardly reaches the "unduly prejudicial" level required under *Payne* for a constitutional violation. Neither the evidence nor the prosecutor's argument in this case comes anywhere near the emotional appeal made by the prosecutor in *Payne.* *See id.* at 2603 (reciting testimony and prosecutor's closing argument). It is much more like the evidence and argument we found acceptable in *Black v. Collins,* 962 F.2d 394 (5th Cir. 1992), where there was testimony that the victim "was a hard-working, devoted wife and mother," and the prosecutor commented on the need of the victim's son for counseling. *Id.* at 408 & n. 12. Accordingly, the district court correctly rejected this claim.

## VI.  PREJUDICIAL PHOTOGRAPHS

Wiley argues that the introduction of photographs of Turner's body lying in a pool of blood and of Patricia Harvey's blood deprived him of a fair trial. On direct appeal, the Mississippi Supreme Court held that the photographs were sufficiently probative and did not simply have the effect of arousing the jury's emotions. *Wiley II,* 484 So.2d at 346. On collateral review, the claim was held barred by res judicata. *Wiley III,* 517 So.2d at 1377.

The district court refused to grant relief on this claim, holding that "[t]he federal habeas court's review of state evidentiary rulings 'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'" (quoting *Mattheson,* 751 F.2d at 1445; additional citation omitted). We cannot conclude that the photographs were so prejudicial as to render the trial fundamentally unfair. Although in the past we have recognized that photographs of the deceased may be relevant to the "especially heinous, atrocious or cruel" aggravating circumstance, *see Hill v. Black,* 891 F.2d 89, 92 n. 1 (5th Cir.1989), *vacated on other grounds,* — U.S. ——, 111 S.Ct. 28, 112 L.Ed.2d 6 (1990), invalidation of that factor does not necessarily mean that photographs of the deceased cannot be introduced. They certainly may be unnecessary, particularly in a case like this where guilt is not in issue and all that remains is the fixing of an appropriate sentence, but the question here is fundamental unfairness. The photographs were introduced to corroborate the testimony of the law enforcement officials who found Turner's body, and are not unusually gruesome. The State did not violate Wiley's rights by introducing them.

## VII.  CONCLUSION

Now that the U.S. Supreme Court has held that *Maynard v. Cartwright* and *Clemons v. Mississippi* apply to defendants whose sentences were decreed by

---

**21.**  *Payne* was decided more than one year after the district court issued its memorandum opin-

ion.

judgments that became final before those decisions were rendered, this case must be returned to the Mississippi courts for a determination of the proper sentence. The Mississippi Supreme Court has indicated that state law bars it from reweighing remaining valid aggravating factors against mitigating evidence, but it has issued no such holding with respect to harmless error analysis. Accordingly, because it is not certain whether Wiley will receive a new sentencing hearing, we have, in the interest of judicial economy, addressed the constitutional claims arising out of his 1984 sentencing trial. We reject these claims for the reasons set forth above.

The judgment of the district court is VACATED insofar as it holds that there was no constitutional error in the jury's use of the "especially heinous, atrocious or cruel" aggravating circumstance. The case is REMANDED to the district court with instructions to issue the writ of habeas corpus unless the State of Mississippi initiates appropriate proceedings in state court within a reasonable time after the issuance of our mandate. In all other respects, the judgment of the district court is AFFIRMED.