**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-10343**
_____


**CORNELIUS A. GOSS,**

**Petitioner - Appellant,**

**VERSUS**

**GARY L. JOHNSON, DIRECTOR,**
**TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**INSTITUTIONAL DIVISION,**

**Respondent - Appellee.**

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:95-CV-51)

_____

October 20, 1999

Before KING, Chief Judge, JOLLY and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:[*]

Petitioner Cornelius A. Goss, an inmate of the Texas Department of Criminal Justice, seeks a certificate of appealability from the district court's refusal to grant him a writ of habeas corpus. We grant COA and deny relief.

Goss was convicted of capital murder and sentenced to death by lethal injection. The sentence was affirmed on direct appeal. _See_ **_Goss v. State_**, 826 S.W.2d 162 (Tex. Cr. App. 1992), _cert. denied_,

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

509 U.S. 922, 113 S. Ct. 3035 (1993). His petition for habeas corpus in state court was denied, and that denial was affirmed on appeal. He subsequently filed a petition for habeas corpus in federal district court, which was likewise denied. Goss only challenges his death sentence -- he does not challenge the underlying conviction -- so we need not repeat the details of the murder.

We address each of Goss' claims in turn.

## I.

Goss contends that he had ineffective assistance of counsel at trial, based on his lawyers' failure to conduct an investigation into his background or to have a mental health exam performed on him, and based on their failure to examine the state's star expert witness on voir dire.

A two-pronged cause and prejudice test governs ineffective assistance claims: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). To demonstrate "cause," Goss must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To establish "prejudice," Goss must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

-2-

Goss complains that his counsel rendered ineffective assistance by failing to conduct a background investigation or a mental health exam to uncover potentially mitigating evidence. He claims that such an investigation should have been triggered by his lawyers' knowledge that he was intoxicated at the time of the offense. He therefore reasons that a mental health exam was necessary to determine whether his conduct was due to a substance abuse disorder or a cognitive impairment. If his lawyers had made such an investigation, Goss contends that his history of psychoactive substance abuse would have been discovered, and the state would not have been able to make the argument it did to the jury: that there was no medical explanation for Goss' offense.

If nothing alerted defense counsel to the potential for mitigating evidence arising from a psychiatric examination, the failure to obtain such an examination is not ineffective assistance of counsel. *See* **Wiley v. Puckett**, 969 F.2d 86, 100 (5th Cir. 1992). A history of substance abuse alone is not sufficient to trigger a duty to conduct such an examination. *See* **id.** To support his claim that his lawyers should have known that an exam was necessary, Goss points to the testimony of his defense expert Dr. William R. Hester, Jr. Dr. Hester's trial testimony did indeed indicate that an examination of Goss for a possible mental impairment was necessary. However, this comment was elicited at trial during the course of an attempt to discredit an opinion of the state's expert witness, and the record contains no evidence

indicating that counsel for Goss had the benefit of this particular opinion prior to trial.

Furthermore, Goss was not prejudiced. The benefit of this information would not have affected the defense theory at trial, which was to dismiss the state's evidence of Goss' anti-social personality as "psycho mumbo jumbo." Since drugs were not related to this offense, the reasons for Goss' drug abuse would not have affected sentencing.

In light of the lack of evidence that counsel had been alerted before trial to information which should have prompted a full mental exam, and considering counsel's reasonable professional decision to pursue a strategy of attacking the methodology used by the state's experts to reach conclusions about Goss' future dangerousness, we conclude that the failure to conduct such an exam was not objectively unreasonable.

**B.**

Goss also complains of his counsel's failure to object to the trial court's refusal to allow voir dire of the state's expert, Dr. Sigel, who testified that a hypothetical person with Goss' history would suffer from "long term chronic anti-social personality" which is untreatable and cannot improve with age. Dr. Sigel opined that such a person "will commit further acts of violence." Although defense counsel had been led to believe that voir dire would be permitted outside the presence of the jury as permitted by Tex. R. Crim. Evid. 705(e), the trial court reversed its position at the

time the state called its expert. Counsel failed to object despite the fact that Texas law clearly provides the right to conduct a voir dire examination in this circumstance. Goss contends that he was prejudiced because after the right to voir dire was lost, his counsel could not have effectively cross-examined the expert.

The district court ruled that Goss had not demonstrated that the state court's failure to follow Tex. R. Crim. Evid. 705(e) constituted a violation of due process or equal protection, and concluded that a writ of habeas corpus should not issue to remedy a failure to take advantage of a state rule of procedure. For the purposes of the ineffective assistance claim, however, it matters not that the underlying attorney conduct related to state procedures which are not constitutionally mandated. The right to effective counsel itself is a right assured by the Constitution, *see* U.S. Const. amends. VI & XIV; *see also* **Powell v. Alabama**, 287 U.S. 45, 57, 53 S. Ct. 55, 59-60 (1932), and the failure to provide effective assistance of counsel, albeit with respect to the competent use of state procedure, can be remedied by a writ of habeas corpus from a federal court.

Still, even were we to assume arguendo that the failure to enter a contemporaneous objection constituted a deprivation of counsel for the purpose of the Sixth and Fourteenth Amendments, the writ cannot issue because Goss was not prejudiced. Despite the lack of voir dire, Dr. Sigel was vigorously cross-examined by Goss' attorney. Moreover, Dr. Sigel's conclusions were directly attacked by two defense experts. We conclude that the opportunity to

-5-

conduct a voir dire examination of Dr. Sigel outside the presence of the jury before cross-examination did not significantly affect the ability of Goss' lawyer to conduct a cross-examination. Any doubts concerning the basis for Dr. Sigel's opinion could be clarified on cross-examination just as easily as on voir dire. We thus conclude that Goss was not prejudiced because a voir dire examination of Dr. Sigel likely would not have altered the result of the sentencing proceeding.

## II.

Goss argues that the trial court's disallowance of a voir dire examination of Dr. Sigel caused his trial to be fundamentally unfair and thereby violated his right to due process. Here, we may rest on procedural default. As previously noted, counsel for Goss failed to make a contemporaneous objection. A contemporaneous objection is required for the preservation of error in Texas courts, *see* Tex. R. App. P. 33.1, and the rule is well-established and consistently applied. *See* **Hogue v. Johnson**, 131 F.3d 466, 487 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1297 (1998). Having waived his objection by failing to make it at trial, Goss must demonstrate cause and prejudice to overcome his procedural default. *See* **Wainwright v. Sykes**, 433 U.S. 72, 86-87, 97 S. Ct. 2497, 2506 (1977); *see generally* 17A Charles Alan Wright et al., *Federal Practice and Procedure* § 4266.1 (2d ed. 1988). The only reason given by Goss for his failure to object, mistake by counsel, does not constitute cause unless it rises to the level of ineffective

assistance of counsel. *See **Murray v. Carrier***, 477 U.S. 478, 486-88, 106 S. Ct. 2639, 2644-45 (1986). We have already rejected that possibility, *see supra* Part II. Additionally, as already noted, *see **id.***, Goss was not prejudiced by his lawyer's inability to conduct the voir dire examination.

## III.

In Texas, the capital sentencing procedure requires jurors to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.071, § 2(b)(1) (Vernon 1981). The jury answered this special issue in the affirmative. Goss challenges his sentence based on the trial judge's failure to instruct the jury about the meaning of the term "criminal acts of violence" and based on the sufficiency of the evidence to support the jury's verdict.

## A.

First, we consider the trial judge's failure to define "criminal acts of violence." During the jury voir dire, most of the eventual jury members were told by the presiding judge that "criminal acts of violence" are "crimes against persons, or crimes against property involving violence to persons." A different judge presided over Goss' trial, and over objections by the defense he declined to instruct the jury about the meaning of the phrase. During deliberations, the jury sent the judge a handwritten note

which asked whether "criminal acts of violence" are "against property or persons or both."  The jury also asked for "a copy of the legal definition of 'criminal act of violence.'"  The judge declined to provide the requested definition.

Goss contends that "criminal acts of violence" should have been defined due to the confusion that was caused when some but not all jurors heard a definition early in the proceedings.  According to Goss, the mid-deliberation handwritten note demonstrates juror confusion on this issue, and the trial judge erred by refusing to provide a definition.

The district court concluded that this complaint is barred by the rule in **Teague v. Lane**, 489 U.S. 288, 109 S. Ct. 1060 (1989), and we agree.  Under **Teague**, a federal court is powerless to grant habeas relief based on a "new rule" of constitutional law.  On June 28, 1993, the date the Supreme Court denied certiorari in the direct appeal of Goss' conviction, the law in Texas plainly provided that the failure to define "criminal acts of violence" was not error.  *See, e.g.*, **James v. Collins**, 987 F.2d 1116, 1119-20 (5th Cir. 1993).  To rule otherwise now would require the application of a "new rule."  Neither of the narrow **Teague** exceptions applies, so we cannot grant relief based on the failure of the trial court to provide the jury a definition of "criminal acts of violence."

**B.**

Goss also challenges the sufficiency of the evidence to support the jury's verdict on this special issue. We need not reach the merits of the argument because Goss failed to pursue the issue on direct appeal. The state habeas court denied the writ, reasoning that Goss confronts a procedural bar because Texas does not permit collateral challenges to sufficiency of the evidence; such claims must be asserted in a direct appeal. The district court likewise denied the writ based on the state court's disposition on that independent and adequate state procedural ground.

We tend to agree, but we base our decision on even simpler principles concerning waiver. The Supreme Court recently ruled:

> Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.
>
> . . . .
>
> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 119 S. Ct. 1728, 1731 (1999). According to a well-established and consistently applied rule, the appellate review process in Texas requires challenges to sufficiency of the evidence to be raised on direct appeal, not in collateral proceedings. *See, e.g.,* **Ex parte Brown**, 757 S.W.2d 367, 368 (Tex.

-10-

Cr. App. 1988); *Ex parte Williams*, 703 S.W.2d 674, 677 (Tex. Cr. App. 1986) ("It has long been the general rule that the sufficiency of the evidence cannot be attacked collaterally."); *Ex parte McKay*, 199 S.W. 637, 639 (Tex. Cr. App. 1917) ("It is a general and well-established rule that, when a court has jurisdiction to enter a particular order or render a given judgment, and in the exercise of this jurisdiction enters an order or judgment regular on its face, its validity is conclusively presumed unless set aside or annulled in a direct proceeding."); *cf.* *Sutherland v. De Leon*, 1 Tex. 250 (1846) ("We are not now, however, to inquire into the irregularities of the judgment on the attachment; if not void, it cannot be treated as a nullity, although error may be very apparent on the record; until reversed, it is conclusive of the subject-matter, unless successfully impeached for fraud."). Goss has failed to do so, and the opportunity to raise this complaint on direct review is long passed. Thus Goss' failure to present this error to the Texas Court of Criminal Appeals on direct appeal and in a timely fashion has resulted in a procedural default of those claims. *See Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S. Ct. 2546, 2555 (1991); *Engle v. Isaac*, 456 U.S. 107, 125-26 n.28, 102 S. Ct. 1558, 1571 n.28 (1982).

## IV.

Goss contends that he is entitled to relief based on the prosecution's violation of the rule in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), requiring the disclosure of exculpatory

evidence to the defense. He contends that the prosecution failed to disclose the identity of a taxi driver hired by Goss after the murder, and the fact that it had promised to dismiss charges against one of the witnesses in exchange for her testimony.

Goss contends that the taxi driver may have testified that he (Goss) was intoxicated immediately after the crime, thereby negating the mens rea element of the crime. But there is no evidence in the record to suggest that the taxi driver observed Goss to be intoxicated. Thus no **Brady** relief is available because Goss has not shown that the evidence is material, *i.e.*, that "there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." **United States v. Bagley**, 473 U.S. 667, 681-82, 105 S. Ct. 3375, 3383 (1985).

Goss also contends that the prosecution suppressed the fact that criminal charges against one of the state's witnesses were dropped in exchange for testimony. The state habeas court determined that there was no such deal. That factual finding is presumed to be correct. *See* 28 U.S.C. § 2254(d)(2). Goss points to no evidence which overcomes this presumption, and we are therefore powerless to grant relief.

**V.**

Finally, relying on various newspaper articles and statistics, Goss complains that he was the victim of racially discriminatory prosecution policies at the Dallas County District Attorney's Office. He makes no effort to prove purposeful discrimination

against him or a discriminatory effect on him, as are required to make such a claim under **McClesky v. Kemp**, 481 U.S. 279, 292, 107 S. Ct. 1756, 1766 (1987).  In light of this fundamental failing, we cannot grant relief.

## **VI.**

We grant the certificate of appealability requested by Goss. For the aforementioned reasons, we affirm the district court's denial of the writ, largely for the same reasons expressed by the district court.

**AFFIRMED.**