**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**February 12, 1998**

Charles R. Fulbruge III
Clerk

REVISED, March 31, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 97-60243

JAMES E. BILLIOT,

Petitioner-Appellee,

versus

STEVE W. PUCKETT, Commissioner,
Mississippi Department of Corrections, and
JAMES V. ANDERSON, Superintendent,
Mississippi State Penitentiary,

Respondents-Appellants.

Appeal from the United States District Court for the
Southern District of Mississippi

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Respondents appeal the district court's order granting appellee's petition for a writ of habeas corpus as to his sentence of death. For the reasons set forth below, we REVERSE and REMAND for further proceedings.

I.

On January 29, 1982, petitioner, James E. Billiot, was indicted for capital murder by a Hancock County, Mississippi grand jury. The indictment charged that, on November 26, 1981, Thanksgiving Day, Billiot, using an eight-pound sledgehammer, bludgeoned to death his step-father, mother, and fourteen-year old step-sister. In addition, the indictment alleged that the murder of Billiot's step-father, Wallace Croll, Jr., occurred contemporaneously with a robbery upon him. After

Billiot's motion for a change of venue was granted, he was tried and convicted of capital murder and sentenced to death by a jury on December 2, 1982, in Harrison County, Mississippi. With respect to the death sentence, the jury returned the following verdict:

> We, the jury, unanimously find that the aggravating circumstances of
> (1) capital murder was committed while the Defendant, James Billiott [sic], was engaged in the commission of the crime of robbery.
> (2) James Billiot committed the capital murder in an especially heinous, atrocious and cruel manner,
> sufficient to impose the death penalty, and that there are insufficient mitigating circumstances to outweight [sic] the aggravating circumstances, and we unanimously find that the Defendant should suffer death.

Tr. Vol. VII, at 1134-35.

In 1984, the Mississippi Supreme Court, on direct appeal, affirmed both Billiot's conviction and death sentence and denied his request for a rehearing. Billiot v. State, 454 So.2d 445 (Miss. 1985). Subsequently, on February 18, 1985, the United States Supreme Court denied Billiot's petition for a writ of certiorari. Billiot v. Mississippi, 469 U.S. 1230, 105 S. Ct. 1232, reh'g denied, 470 U.S. 1089, 105 S. Ct. 1858 (1985). The Mississippi Supreme Court, upon motion by the State, then set Billiot's execution for May 15, 1985. On April 16, 1985, however, the Mississippi Supreme Court stayed the execution to allow Billiot to file state post-conviction papers. On October 30, 1985, the Mississippi Supreme Court denied petitioner's request for post-conviction relief, Billiot v. State, 478 So.2d 1043 (Miss. 1985), and, on December 4, 1985, denied his petition for rehearing. After the United States Supreme Court denied certiorari, Billiot v. Mississippi, 475 U.S. 1098, 106 S. Ct. 1501 (1986), the Mississippi Supreme Court, upon motion by the State, set Billiot's execution date for May 7, 1986.

On April 28, 1986, Billiot filed his original petition for a writ of habeas corpus in the United States District Court for the Southern District of Mississippi. Among other things, Billiot claimed that he was presently insane and therefore incompetent to be executed. On September 10, 1986, in light of the Supreme Court's decision in Ford v. Wainwright, 477 U.S. 399, 106 S. Ct. 2595 (1986), the district court ordered that the petition be held in abeyance until Billiot refiled his petition for state post-conviction relief and thereby exhausted his insanity claim. Billiot then filed a second petition for

state post-conviction relief. On review, the Mississippi Supreme Court, sitting en banc, found that Billiot was entitled to an evidentiary hearing before the circuit court of the First Judicial District of Harrison County on the limited issue of his claimed present insanity. Billiot v. State, 515 So.2d 1234, 1235 (1987).

On November 14 and 15, 1988, the circuit court held an evidentiary hearing on Billiot's insanity claim, and, on May 16, 1989, the court issued its findings of fact and conclusions of law, in which it found Billiot presently sane under the standards set forth in Mississippi Code Annotated § 99-19-57(2)(a) & (b), and Ford v. Wainwright. In May 1991, the circuit court denied Billiot's motion to alter and amend the judgment. On February 16, 1995, the Mississippi Supreme Court affirmed the decision of the circuit court. Billiot v. State, 655 So.2d 1 (Miss. 1995). Finally, on January 22, 1996, the United States Supreme Court denied certiorari. Billiot v. Mississippi, -- U.S. --, 116 S. Ct. 818 (1996).

Having, at long last, exhausted his state law claims, Billiot's petition for a writ of habeas corpus was once again before the district court. In his amended and supplemental petition,[1] Billiot asserted multiple claims related to his original conviction and sentence, as well as claims related to the state proceedings on his alleged present insanity.[2]

---

[1] On August 19, 1996, the district court granted petitioner's motion for leave to file an amended and supplemental petition. In his amended petition, Billiot sought not only to update his present insanity claim but also to delete claims that were no longer viable. Respondents opposed the motion to amend, contending, among other things, that, if the amendment were allowed, the district court should treat the petition as "the filing of a new petition" and therefore subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The district court rejected the respondents' argument and allowed Billiot to amend. The respondents have not appealed this decision.

[2] Specifically, the district court set forth Billiot's claims as follows:

A.    The Present Insanity Claim and Proceedings

1.    Petitioner is currently insane so that to execute him would violate the Eighth Amendment by inflicting upon him cruel and unusual punishment;
2.    To execute petitioner would violate the Fifth and Fourteenth Amendments by denying him the right to due process of law, because:
   a.    The State's procedure for determining his competence to be executed was inadequate;
   b.    Medicating petitioner in preparation for the state court hearing on his claim of present insanity, without his consent or notice to his counsel or the court, violated his due process rights and directly affected his presentation to the state court trier of fact;

- 3 -

In reviewing Billiot's petition, the district court first addressed Billiot's claim that his death sentence should be vacated because the "cruel, heinous, and atrocious" aggravating circumstance, as given, was constitutionally infirm. The district court agreed and, relying on <u>Wiley v. Puckett</u>, 969

3. The Mississippi Supreme Court's finding of waiver is not based on an independent and adequate state procedural ground;

4, The evidence presented at the insanity hearing was evaluated under incorrect legal standards:
    a. The trial court erred in applying a legal presumption that petitioner is competent to be executed;
    b. The state court's interpretation of present insanity is constitutionally flawed;

5. De novo review of the finding of present insanity is essential to protect the constitutional issue at stake;

6. The evidence does not support the finding that the petitioner is competent to be executed;

7. Petitioner's mental state has further deteriorated since the 1988 hearing and he should be given a hearing on his present insanity claim;

B. The Claims Relating to Petitioner's Trial and Sentencing

1. Petitioner was denied effective assistance of counsel in violation of his Sixth Amendment right to counsel, in that his counsel:
    a. Failed to reasonably investigate or discover the existence of mitigating evidence, and failed to present mitigating evidence;
    b. Failed to object to Jury Instruction C-01 at the guilt/innocence phase, and failed during the sentencing phase to object to erroneous jury instructions relating to mitigating factors or to offer additional instructions on mitigating circumstances;
    c. Failed to offer evidence in support of the post-trial motion for a new trial based upon newly discovered evidence;

2. Petitioner's due process rights under the Fifth and Fourteenth Amendments were violated by:
    a. The jury's finding of the "especially heinous, atrocious, and cruel" aggravating circumstance;
    b. Prosecutorial misconduct during the closing argument on the guilt/innocence phase;
    c. The use, as an "aggravating circumstance," that the murder was committed during the commission of a felony, to justify the imposition of the death sentence, was itself a necessary element of the underlying crime of capital murder.
    d. Miss. Code Ann. § 97-3-19(2)(e) (Rev. Ed. 1994) was improperly applied because the state never proved the petitioner's intent to commit robbery;
    e. The statute and instruction at the sentencing phase shifted the burden of proof to petitioner and contained no standards for weighing;
    f. The prosecution's use of statements made by petitioner during a court-ordered psychiatric examination on the issue of his competence to stand trial, where petitioner was not first advised by the psychiatrist of his right to remain silent;

3. The Mississippi Supreme Court misunderstood the psychological testimony in enunciating its decision relative to a "majority report" and "minority report";

4. Petitioner was subjected to double jeopardy in violation of the Fifth and Fourteenth Amendment for the felony and robbery underlying his capital conviction;

5. The trial court's denial of petitioner's motion for a change of venue abridged his Sixth and Fourteenth Amendment rights to an impartial jury;

6. Petitioner was denied his right to a fair and impartial trial because:
    a. His request for individual voir dire of potential jurors was denied and his voir dire of potential jurors was limited;
    b. The court refused to excuse certain jurors for cause and denied petitioner additional peremptory challenges; and
    c. The court refused to provide special venire.

F.2d 86, 94 (5th Cir. 1992), held that "the writ is due to be issued unless the State of Mississippi initiates the appropriate proceedings in state court within a reasonable time after the issuance of this opinion." In the alternative, the district court held that Billiot was entitled to relief on this ground even if Wiley did not apply because the error was not harmless under either Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967), or Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993). Recognizing "the strong possibility that the Mississippi Supreme Court [would] remand petitioner's cause for resentencing," see Wilcher v. State, 635 So.2d 789, 791 (Miss. 1993) (remanding for resentencing after noting that, as a matter of state law, it lacked the authority to either reweigh the aggravating and mitigating circumstances or conduct harmless error analysis),[3] the district court declined to reach Billiot's other claims relating to the sentencing phase of his trial.[4] The district court did, however, address the claims relating to the guilt phase of Billiot's trial, all of which were denied. Because Billiot has not appealed the district court's denial of his claims relating to the guilt phase, the sole issue before this court is whether the district court properly concluded that Billiot was entitled to habeas relief because the "cruel, heinous, and atrocious" aggravating circumstance was constitutionally infirm.

II.

In death penalty lexicon, Mississippi is known as a weighing state. In such a state, in order for a jury to return a sentence of death, it must find that the applicable statutory aggravating circumstances outweigh any applicable statutory or non-statutory mitigating circumstances. Stringer v. Black, 503 U.S. 222, 229-30, 112 S. Ct. 1130, 1136 (1992). In part, this weighing process

---

[3] This state prohibition against reweighing or conducting a harmless error analy sis was superseded bystatute in 1994. Miss. Code Ann. §§ 99-19-105(3)(d) & (5)(b). Accordingly, the Mississippi Supreme Court has held that only those whose convictions were final before August 23, 1994, are automatically entitled to a new sentencing hearing. See Cole v. State, 666 So.2d 767 (Miss. 1995).

[4] Likewise, although unstated, we assume that the district court declined to address Billiot's claims relating to his present sanity claim for similar reasons. In short, there was no reason to address whether Billiot was sufficiently sane to be executed in light of the fact that the death sentence had been vacated.

furthers the important Eighth Amendment purpose of ensuring that the defendant receives an individualized sentence. Id. at 230, 112 S. Ct. at 1136. When a jury in a weighing state relies on an invalid aggravating circumstance in deciding to impose the death penalty, however, the sentencing process violates the Eighth Amendment because it "creates the possibility not only of randomness but also of bias in favor of the death penalty." Id. at 235-36, 112 S. Ct. at 1139; accord Clemons v. Mississippi, 494 U.S. 738, 752, 110 S. Ct. 1441, 1450 (1990). Nonetheless, the Supreme Court has held that the state courts can cure such an error either by reweighing the aggravating and mitigating circumstances or by performing constitutional harmless error analysis. Stringer, 503 U.S. at 232, 112 S. Ct. at 1137.

In this case, the jury found that two statutory aggravating circumstances existed, one of which was that the murder was committed in an "especially heinous, atrocious, or cruel manner." As the State concedes, the "heinous, atrocious, and cruel" aggravating circumstance, as given, was unconstitutionally vague. See Stringer, 503 U.S. 222 (1992); Clemons, 494 U.S. 738 (1990); Maynard v. Cartwright, 486 U.S. 356, 108 S. Ct. 1853 (1988). The State further concedes that the Mississippi Supreme Court failed to cure the error on direct appeal. It nonetheless argues that under Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993), the district court had both the authority and the obligation to conduct its own harmless error analysis before granting habeas relief. As we have noted in numerous opinions, in Brecht, the Supreme Court, relying on the principles of comity, federalism, and finality, held that trial type error will not serve as a basis for federal habeas relief unless the error "had a substantial and injurious effect or influence in determining the jury's verdict." Id. at 636-38, 113 S. Ct. at 1721-22; e.g., Shaw v. Collins, 5 F.3d 128, 132 (5th Cir. 1993). Because the error occasioned by the sentencer's consideration of a vague aggravating circumstance is trial type error, see Clemons, 494 U.S. at 752, 110 S. Ct. at 1450, we agree with the State that Brecht should control the analysis in this case.

Billiot, however, relying on Wiley v. Puckett, 969 F.2d 86, 94 (1992), contends that this court may not consider whether the giving of the "heinous, atrocious, and cruel" aggravating circumstance

constituted harmless error but, instead, must "remand" the case to the state court for a decision on that question.[5]  In Wiley, this court held that the Supreme Court was "quite clear" in both Clemons and Stringer that only the state courts can perform such harmless error analysis.  Wiley, 969 F.2d at 94 n.8.  Billiot further argues that in light of this court's application of Wiley after Brecht in King v. Puckett, 1 F.3d 280 (5th Cir. 1993), this court is precluded from applying Brecht under this circuit's rules governing intra-circuit stare decisis.  Alternatively, in the event that this court determines that it is not bound to follow King and Wiley, Billiot argues that Brecht does not apply to errors occasioned by the sentencer's weighing of a vague aggravating circumstance in deciding to impose the death penalty.

We first address Billiot's argument that we are bound to follow King and Wiley by the rules of intra-circuit stare decisis.  As a general rule, one panel may not overrule the decision of a prior panel, right or wrong, in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court.  Pruitt v. Levi Strauss & Co., 932 F.2d 458, 465 (5th Cir. 1991).  Although we recognize that King was decided over three months after Brecht, and that we would normally be obligated to follow its decision, even though the King court apparently did not consider the impact of Brecht on Wiley, see Broussard v. Southern Pac. Trans. Co., 665 F.2d 1387, 1389-90 (5th Cir. 1982), we are equally mindful of the rule that "where two previous holdings or lines or precedent conflict, 'the earlier opinion controls and is the binding precedent in the circuit.'"  Society of Separationists, Inc. v. Herman, 939 F.2d 1207, 1211 (5th Cir. 1991) (quoting Boyd v. Puckett, 905 F.2d 895, 897 (5th Cir. 1990)).  In this respect, we note that in the interim between Brecht and King, this court recognized the primacy of Brecht in at least four cases.  For example, in Pemberton v. Collins, 991 F.2d 1218 (5th Cir. 1993), we cited Brecht for the proposition that "federal habeas corpus relief will not be granted unless the error 'had a substantial

---

[5]  Although we recognize that many courts have used the expression, we note that a federal habeas court cannot "remand" a case to the state courts.  If the writ is granted, or even conditionally granted, the state, pursuant to available state procedures, may then take whatever action it deems necessary, including reinitiating state court proceedings.  Thus, although the case may ultimately find its way back to the state courts as a result of a federal habeas action, the case is by no means "remanded" to the state courts.

and injurious effect or influence in determining the jury's verdict.'" Id. at 1226. Likewise, in Nethery v. Collins, 993 F.2d 1154 (5th Cir. 1993), we again cited Brecht for the proposition that "'trial type error' will serve as a basis for habeas relief only if it 'had a substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 1159 n.15 (quoting Brecht); see also Vanderbilt v. Collins, 994 F.2d 189, 198-99 (5th Cir. 1993); Lowery v. Collins, 996 F.2d 770, 772 (5th Cir. 1993). Although we recognize that none of these cases involved the specific trial error at issue in either Wiley or King, we nonetheless recognized in both Pemberton and Nethery that Brecht is a limit on the authority of a federal habeas court to grant habeas relief in general.[6] Thus, we conclude that King conflicts not only with Brecht but, more importantly, in terms of intra-circuit stare decisis, with this court's earlier decisions in Pemberton and Nethery. Accordingly, we conclude that we are not bound by the King court's application of Wiley.[7]

We next turn to Billiot's argument that Brecht does not apply to trial error occasioned by the sentencing jury's weighing of an unconstitutionally vague aggravating circumstance. In support of this position, Billiot relies primarily on the fact that the Supreme Court opinions authorizing harmless error review of a vague aggravating circumstance expressly refer only to state appellate courts. See, e.g., Richmond v. Lewis, 506 U.S. 40, 48-49, 113 S. Ct. 528, 535 ("[O]nly constitutional harmless

---

[6] We do note, however, that the Court in Brecht left open the possibility that in "an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict." Brecht, 507 U.S. at 638 n.9, 113 S. Ct. at 1722 n.9.

[7] Billiot also seeks to rely on the "history" of the Willy Smith case in support of his position that we are bound by Wiley. In addition, the reasons set forth with respect to King, a short review of the history of the Willy Smith case reveals that Billiot's reliance on this history is misplaced. Before Stringer v. Black, 403 U.S. 222 (1992), this court denied Smith's Clemons claim. Smith v. Black, 904 F.2d 950 (5th Cir. 1990) (Smith I). After Stringer was decided, the Supreme Court then remanded Smith's case for further consideration. Smith v. Black, 503 U.S. 930 (1992) (Smith II). On remand, and before the Supreme Court's decision in Brecht, this court applied Wiley and directed the district court "to issue the writ unless the State of Mississippi initiates appropriate proceedings in state court within a reasonable time after the issuance of our mandate." Smith v. Black, 970 F.2d 1383, 1388 (5th Cir. 1992) (Smith III). After the State of Mississippi failed to initiate proceedings in state court, the district court then ordered that Smith be sentenced to life imprisonment. The State appealed, arguing that this order exceeded the scope of this court's mandate in Smith III. This court agreed and continued to endorse the mandate of Smith III. Smith v. Lucas, 9 F.3d 359, 367-68 (5th Cir. 1993) (Smith IV).

Billiot argues that, because Smith IV was decided almost eight months after Brecht, Smith IV should be read as another post-Brecht application of Wiley. We disagree. The more appropriate reading of Smith IV is that this court was merely reaffirming its previous mandate, which was issued before the Supreme Court's decision in Brecht. Thus, Billiot's argument is unavailing.

error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence. Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand."); Stringer, 503 U.S. at 237, 112 S. Ct. at 1140 ("Use of a vague or imprecise aggravating factor in the weighing process invalidates the sentence and at the very least requires constitutional harmless-error analysis or reweighing in the state judicial system."). According to Billiot, we should interpret the Supreme Court's silence in these cases with respect to federal habeas courts as an affirmative statement that federal habeas courts are not authorized to conduct such an analysis. As two of our sister circuits have recognized, however, Billiot has read too much into this silence. See Williams v. Clarke, 40 F.3d 1529 (8th Cir.), cert. denied, 514 U.S. 1033, 115 S. Ct. 1397 (1995); Smith v. Dixon, 14 F.3d 956 (4th Cir.), cert. denied, 513 U.S. 841, 115 S. Ct. 129 (1994).

For example, in Williams, the Eighth Circuit noted that "[i]n authorizing state appellate courts to either reweigh the aggravating and mitigating circumstances or to engage in a constitutional harmless error analysis, the Court has in no way forbidden federal habeas courts from engaging in their usual constitutional harmless error analysis." 40 F.3d at 1540. Indeed, this silence is not surprising given the procedural posture of these cases before the Supreme Court:

> The Supreme Court cases thus far have arisen either in the context of a direct appeal from a state appellate court where the Court naturally is explaining what avenues of analysis are available to the state appellate courts, see Clemons, 494 U.S. at 741, 110 S.Ct. at 1444; Sochor, 504 U.S. at ----, 112 S.Ct. at 2117; or in the context of a habeas action where harmlessness was not at issue, see Stringer, 503 U.S. at ----, 112 S.Ct. at 1140 (at issue was whether a federal habeas petitioner sentenced before Clemons could rely on the principle set forth therein); Richmond, 506 U.S. at ----, 113 S.Ct. at 535 (respondent did not claim that the error was harmless; only the reweighing process was at issue).

Clarke, 40 F.3d at 1540 n.5.

Similarly, the Fourth Circuit in Smith noted that "none of the opinions containing this language were ones in which a lower federal court had conducted, or refused to conduct, harmless error review. Thus, none of the opinions actually addressed the issue that is presently before the court." 14 F.3d at 977. The Fourth Circuit further noted that "careful scrutiny of these opinions

upon which [Billiot] relies does not indicate that the Court disapproves of federal habeas courts conducting harmless error analysis with respect to this error." Smith, 14 F.3d at 977. We find the Smith court's extensive discussion of these cases persuasive and adopt its reasoning. See id. at 977-78.

In sum, therefore, consistent with the positions of each of the circuit courts that have addressed this issue,[8] we decline Billiot's invitation to carve out an exception to the rule of general applicability announced in Brecht for trial errors occasioned by the sentencer's consideration of a vague aggravating circumstance.[9] We therefore hold that before a federal habeas court can grant relief on a trial error, including an error occasioned by the sentencer's weighing of a vague aggravating circumstance, the habeas court must review the alleged error for harmlessness.[10] To the extent that Wiley and King hold otherwise, we conclude that they are not the controlling law of this circuit.

III.

Having determined that a federal habeas court must conduct a harmless error analysis of all trial errors, including those occasioned by the sentencer's weighing of a vague aggravating circumstance, before granting habeas relief, we must next determine the appropriate standard of review for determining harmlessness in these cases. Billiot, relying on a number of decisions from

---

[8] The Tenth Circuit, relying on Smith and Williams, has also concluded that a federal habeas court has the authority to review errors occasioned by the sentencer's consideration of a vague aggravating circumstance. See Davis v. Executive Director of Dep't of Corrections, 100 F.3d 750, 768 n.18 (10th Cir. 1996), cert. denied, -- U.S. --, 117 S. Ct. 1703 (1997).

[9] As set forth below in Part III, however, we do disagree with the Eighth Circuit as to the appropriate standard of review in these cases.

[10] Billiot also argues that we should grant habeas relief due to the unique state constitutional principles associated with Mississippi capital sentencing system. As noted above, see supra note 3, under Mississippi law, a capital felon who was sentenced before August 23, 1994, has a statutory right to be sentenced by a jury. The Mississippi Supreme Court has interpreted this right as precluding it from either reweighing or conducting harmless error analysis in these cases. According to Billiot, therefore, the State's reliance on Brecht is a naked attempt to make an end run around the Mississippi Supreme Court's interpretation of the Mississippi Constitution. In making this argument, however, Billiot forgets that federal habeas is not designed to vindicate state constitutional rights. Accordingly, Billiot's argument is unavailing.

the Eighth Circuit, see, e.g., Williams, 40 F.3d at 1540-41, argues that the "harmless beyond a reasonably doubt" standard of Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967), should apply, rather than the more lenient standard set forth in Brecht, because no Mississippi Court has ever reviewed this claim under the Chapman standard.  In other words, Billiot argues that a federal habeas court should apply the more lenient Brecht standard only when the state courts have first reviewed the claim under the more stringent Chapman standard.  This argument, however, was recently rejected, in an alternative holding, by another panel of this court, Hogue v. Johnson, 1997 WL 768631 at *21-22 (5th Cir. December 12, 1997) (relying on cases from the Fourth, Seventh, Tenth, and Eleventh Circuits).  Accordingly, adopting the reasoning of Hogue, we will apply Brecht.

As noted above, in Brecht, the Supreme Court held that a federal habeas court may not grant relief unless the petitioner demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict."  We have interpreted this standard in the following manner:

> [U]nder Brecht, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict.  We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the Brecht standard, of the error, then we must conclude that it was harmful.  O'Neal v. McAninch, 513 U.S. 432, ----, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995).

Woods v. Johnson, 75 F.3d 1017, 1026-27 (5th Cir. 1996).  Applying this general standard to the specific review of a vague aggravating circumstance, we note that the error is harmless if the court concludes that either: (1) the sentence would have been the same had the unconstitutionally vague aggravating circumstance not been submitted to the jury at all; or (2) the sentence would have been the same had the unconstitutionally vague aggravating circumstance been properly defined in the instructions.  See Clemons, 494 U.S. at 753-54, 110 S. Ct. at 1450-51.

In its alternate holding, the district court found that it was not convinced that the error did not have "a substantial and injurious effect or influence in determining the jury's verdict."  It appears, however, that the district court considered only whether the sentence would have been the same had

the unconstitutionally vague aggravating circumstance not been submitted to the jury at all. Although we agree with the district court that such a conclusion would be difficult given the emphasis that the State placed on the "heinous, atrocious, and cruel" nature of the crime, see Clemons, 494 U.S. at 753-54, 110 S. Ct. at 1451, because the constitutional defect may be cured by either of the two methods, we find that the district court erred in not making the second inquiry. Accordingly, we now address whether the sentence would have been the same had the vague aggravating circumstance been properly defined in the instructions to the jury.

In Coleman v. State, 378 So.2d 640 (Miss. 1979), the Mississippi Supreme Court, quoting Spinkellink v. Wainwright, 578 F.2d 582, 611 (5th Cir. 1978), adopted the following limiting construction of the "heinous, atrocious, and cruel" aggravating circumstance:

> What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies -- the conscienceless or pitiless crime which is unnecessarily torturous to the victim.

378 So.2d at 648. This construction was approved by the Supreme Court in Clemons, 494 U.S. at 750, 110 S. Ct. at 1449. The State argues that had this limiting instruction been given to the jury, the jury would have concluded that the murders were especially heinous, atrocious, and cruel, and would have decided to impose the death penalty given the facts of this case. According to the State, therefore, the unconstitutionally vague instruction did not have a substantial and injurious effect on the verdict reached by the jury. After reviewing the evidence introduced at trial, we agree.

The evidence introduced at trial showed that on Thanksgiving Day in 1981, Billiot hitched a ride to his mother and step-father's house from Leo Jones, an acquaintance of Billiot. Rather than allowing Jones to drop him off in front of his mother's house, however, Billiot insisted that Jones drop him off in a field near the house. According to Jones, Billiot told him that "he was going to walk through the field, that he had some shooting to do . . . ." Another acquaintance of Billiot testified that, almost three weeks before the murders, Billiot told him he was going to kill his mother and step-father.

Shortly after arriving at the house, Billiot, using an eight-pound sledgehammer, bludgeoned

- 12 -

to death his step-father (Wallace Croll), his mother, and his fourteen-year old step-sister. The evidence showed that Billiot hit Mr. Croll in the head at least two to three times with the sledgehammer, resulting in multiple fractures and massive trauma to the head. One witness testified that Mr. Croll's "head was beat into a mush, and there was blood and brains laying all over the floor." Mr. Croll, however, did not die quickly; instead, he struggled to survive for over two hours. Witnesses at the crime scene testified that there "was still a little life in him" when they arrived at the house, and they attempted mouth-to-mouth resuscitation in a futile attempt to save him. Before fleeing in his step-father's car, Billiot removed Mr. Croll's wallet from his person and stole approximately $60.

Billiot's mother and fourteen-year old step-sister were also found in the house, murdered in the same manner. Billiot's mother was found on her knees, leaning over a couch, bludgeoned to death in the living room, which, according to witnesses, is visible from the kitchen where Mr. Croll was found. Billiot's step-sister was also found bludgeoned to death in the living room, a short distance from her mother.

Billiot nonetheless argues that we cannot conclude that the error was harmless under Brecht given the mitigating evidence introduced at the trial. Specifically, Billiot argues that a properly limited instruction would have directed the jury that in order to find the aggravating factor, the jury would have had to have found that Billiot acted "without pity or conscience," suggesting that Billiot must have acted with a certain mens rea. According to Billiot, in light of the extensive evidence introduced as to his diminished mental capacity, the jury would not have found that the crime was heinous, atrocious, and cruel had the limiting instruction been given. After reviewing the record, however, we conclude that even had the jury been properly instructed, it would have nonetheless found that Billiot's murder of his step-father, mother, and step-sister was especially heinous, atrocious, and cruel. Moreover, we conclude, without hesitation, given the facts of this case, that even had the jury been properly instructed, the jury would nonetheless have sentenced Billiot to death. Consequently, we hold that the constitutional error that resulted from the jury's consideration of the

unconstitutionally vague aggravating circumstance did not have a substantial and injurious effect or influence on the jury's verdict.

IV.

In sum, we hold that pursuant to <u>Brecht v. Abrahamson</u>, a federal habeas court must conduct a harmless error analysis of all trial errors, including those occasioned by the sentencer's weighing of an invalid aggravating circumstance, before granting habeas relief.  Applying <u>Brecht</u> to the facts of this case, we find that the error occasioned by the jury's consideration of the vague aggravating circumstance was harmless because it did not have a substantial and injurious effect or influence on the jury's verdict.  Accordingly, we REVERSE the decision of the district court on this ground. Because the district court declined to address Billiot's remaining arguments related to his sentencing, however, we REMAND for a determination on these issues.