EMILIO M. GARZA, Circuit Judge,
dissenting:
I agree with the majority that the State presented no evidence that could have supported applying the “great risk of death to many people” aggravating circumstance, and that the jury therefore should not have been instructed that it could weigh that aggravating circumstance in its decision to impose the death penalty. I also agree that this case would be unproblematic if the jury had been instructed that the only potentially applicable aggravating circumstance was that the petitioner (“Simmons”) committed the murder for pecuniary gain. The only question, then, is whether the inclusion of the “great risk of death to many people” instruction was harmless. I cannot say with any confidence that it was. See O’Neal v. McAninch, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (“[Wjhen a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief.”). Accordingly, I dissent.
A trial court’s submission of an invalid aggravating factor in a capital case is harmless “(a) if the sentence would have been the same had the unconstitutional aggravator never been submitted to the jury, or (b) if the sentence would have been the same had the ... aggravating circumstance been properly defined in the jury instructions.” Nixon v. Epps, 405 F.3d 318, 330 (5th Cir.2005) (citing Billiot v. Puckett, 135 F.3d 311, 319 (5th Cir. 1998)). We will not consider submission of the aggravator sufficiently harmful to warrant habeas relief unless the factor “can be said to have had a ‘substantial and injurious effect on the verdict reached by the jury.’ ” Id. at 329 (quoting Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). There must be “ ‘more than a mere reasonable possibility that [the improper aggravating circumstance] contributed to the verdict. It must have had substantial effect or influence in determining the verdict.’ ” Id. at 330 (quoting Billiot, 135 F.3d at 318). “[I]f, after evaluating the claim in light of the entire record, our minds are in ‘virtual equipoise as to the harmlessness’ of the error, ‘we must conclude that it was harmful.’ ” Id. (quoting Billiot, 135 F.3d at 318); see O’Neal, 513 U.S. at 435, 115 S.Ct. 992. If we are in “grave doubt” about the effect of the error, we cannot deny relief on the ground that the error was harmless. O’Neal, 513 U.S. at 435-37, 115 S.Ct. 992.
The trial court’s erroneous instruction alone does not give us much indication of how much weight the jury may have given the risk of death to others. The State, however, placed significant emphasis on that factor during closing argument. Specifically, the State’s argument to the jury at sentencing went into significantly more detail regarding what the jury might consider under “great risk of death to many people,” focusing the jury’s attention on Charlene Leaser’s predicament. Its discussion of aggravating circumstances began as follows:
Aggravating, why he should receive [the death penalty]; mitigating, why he shouldn’t. Aggravating circumstance in this case, number one, is we submit to you he created a great risk of harm or death. Think of what was in that box for about six or seven hours. Think of what was going to happen to her. Think of what they consciously did to Jeffrey Wolfe, knowing they were going to have to get rid of everything, every piece of evidence including the body.
*546 Simmons then objected to the argument as unsupported by the evidence. The objection was overruled. The State continued:
Where does this all lead? What was he going to do with the eyewitness to this crime? What do you think was happening?
Common sense. You have heard all the evidence. Based on everything you heard, I think it is reasonable to infer, to believe based on everything else, that this was going to happen to her. So, that’s submitted to you. That’s submitted to you because we think that was going to happen. I think you think it was going to happen. You know it was going to happen.
This argument went well beyond the proper bounds of the “great risk of death to many people” aggravating factor, urging the jury to sentence Simmons to death based on facts that were not entitled to aggravating weight. After broadening its discussion to include the pecuniary gain aggravating circumstance, the State concluded by again referring to the treatment of Leaser and again suggesting that that treatment was appropriate for consideration as aggravating evidence:
Unanimously find the aggravating circumstances, pecuniary gain, great risk of harm to many people. Think about Brooke. You go here and you say those circumstances outweigh the mitigating. Those mitigating circumstances do not outweigh. And I ask you to return a penalty of death in this case. If it’s not imposed and the circumstances warrant it, it’s no penalty at all.
It is not difficult to discern the State’s argument. Its discussion of aggravation both opened and closed with emphasis on Simmons’s actions towards Leaser, and the State discussed the “great risk of death to many” aggravator extensively. The State repeatedly urged the jury to place aggravating weight on Simmons’s treatment of Leaser and, in particular, the probability that he would have eventually killed her.
I agree with the majority that it is appropriate to consider, as one factor in our analysis, whether evidence that was given aggravating weight under an improperly admitted factor would have been admissible even in the absence of that factor. But I cannot agree that, simply because the brutal details of Simmons’s treatment of Leaser were admissible, the erroneous instruction was harmless. The majority suggests that this case is not meaningfully distinguishable from Nixon v. Epps, in which we found an erroneously charged aggravating circumstance harmless in light of the extensive “brutal details” on which the jury could have based a sentence of death. 405 F.3d at 331. But the jury in Nixon had been instructed that it could consider as an aggravating circumstance that the capital offense was especially heinous, atrocious or cruel. Id.; see Miss. Code Ann. § 99 — 19—101 (5)(h). In other words, the jury was expressly permitted to give aggravating weight to the brutal details of the crime. As the Mississippi Supreme Court has explained, though, a jury instructed only as to the pecuniary gain aggravator, as this jury should have been, has “no way under the instructions to base their sentence of death on any argument that the crime was especially heinous.” Turner v. State, 732 So.2d 937, 956 (Miss. 1999) (en banc) (internal quotation marks omitted). Similarly, a jury instructed only as to pecuniary gain could not base the sentence of death on the great risk of death to many people. Even assuming that the majority is correct that Simmons’s brutal treatment of Leaser is relevant to establishing the pecuniary gain aggravator, it is relevant only insofar as it supports the inference of a pecuniary motive. Simmons’s brutality to Leaser, any risk he *547 created to her, and any intent to eventually kill her could not have been given aggravating weight in their own right.
It is entirely possible that the jury, properly instructed and acting within the confínes of those instructions, would have imposed the death penalty. Certainly, Mississippi courts have sentenced others to death in cases where pecuniary gain was the only aggravating circumstance. See, e.g., Turner v. State, 953 So.2d 1063, 1076 (2007) (en banc); Byrom v. State, 863 So.2d 836, 881-82 (Miss.2003) (en banc). This jury, unfortunately, never had the opportunity to decide whether the pecuniary gain aggravating circumstance alone outweighed any mitigating circumstances. Making matters worse, the State aggressively emphasized the risk Simmons posed to Leaser and urged the jury to consider that risk under the improperly charged factor. In light of the record as a whole, I cannot say with any confidence that the sentence was not substantially and injuriously influenced by the submission of that improper aggravating circumstance. I therefore respectfully DISSENT.